MARLYS KNIGGE, APPELLEE AND CROSS-APPELLANT, V. CURTIS L. KNIGGE, APPELLANT AND CROSS-APPELLEE.

282 N. W. 2d 581

Filed August 21, 1979. No. 42356.

Winner, Nichols & Meister and Wright & Simmons, for appellant.

George P. Burke of Van Steenberg, Myers & Burke, for appellee.

Heard before KRIVOSHA, C. J., CLINTON, WHITE, and HASTINGS, JJ., and MURPHY, District Judge.

MURPHY, District Judge.

This appeal and cross-appeal arises from the dissolution of a marriage between Marlys Knigge, petitioner and appellee, and Curtis L. Knigge, respondent and appellant.

Primary issues in dispute are the division of property and interest due upon the unpaid balance as a result of the property division.

This action was commenced on October 12, 1976. On March 22, 1977, the trial court entered a decree of dissolution which dissolved the marriage of the parties. However, the questions of child custody, child support, alimony, and division of property were set for trial at a later date. Thereafter, several orders were entered concerning custody of the children, child support, and visitation, which are not in issue on this appeal.

On March 3, 1978, the trial court issued a "Decree on Property Division, Alimony and Child Support" in which the court ordered: "That there shall be an equal division of the property and assets of the parties, * * *." In this decree the court provided for an equal division of the oil and gas leasehold interests between the parties and awarded a judgment to Marlys Knigge in the sum of $320,542.50, subject to certain deductions and allowances, which the court found to be 50 percent of the value of the assets of the parties other than the oil and gas interests, which were also divided equally. The decree further provided that the above judgment would draw interest at the rate of 6 percent per annum from Oc-

tober 12, 1976, to March 3, 1978, and 8 percent per annum from March 3, 1978.

Following this decree, Curtis L. Knigge filed a motion for a new trial. And on August 25, 1978, the trial court entered an order modifying the previous decree, which provided that: "[I]n lieu of a division of property the petitioner shall have judgment against the respondent for $535,880.00 which is one-half his net worth * * * the judgment shall bear interest at 8% per annum from October 12, 1976, on the unpaid balance * * *." Credits for prior payments were allowed, leaving a balance due on the judgment of $474,255, payable $25,000 (plus one-half of the accrued interest) on September 13, 1978, and $56,156.87 plus interest on the unpaid balance on the 1st day of September of each year from 1979 through 1986. No alimony was awarded in the decree of March 3, 1978, nor in the order of modification on August 25, 1978.

From this order of modification, Curtis L. Knigge appealed; and Maryls Knigge cross-appealed, asserting that the trial court erred in sustaining Curtis L. Knigge's motion for new trial in part and in setting aside its decree of March 3, 1978, and entering a new decree on August 25, 1978.

The trial court's order of modification of August 25, 1978, is reversed; and the decree of March 3, 1978, is reinstated as modified.

Curtis and Marlys Knigge were married on March 13, 1955, at Newcastle, Wyoming, and moved to Kimball County, Nebraska, where they have resided until the present time. Four children were born of this marriage. The names and ages of the children at the time this action was commenced are as follows: Steven, age 21; Marla, age 20; Linda, age 16; and John, age 7.

Marlys Knigge was born in 1935 and resided on a farm with her father in South Dakota. After completing the tenth grade in school, she moved to New-

castle, Wyoming, where she worked as a telephone operator. Her employment terminated with her marriage to Curtis and taking up residence in Kimball County, Nebraska. No assets of any substance were brought to the marriage by either party.

After her marriage, Marlys Knigge's primary responsibilities were to rear the children and keep the home. However, occasionally she assisted her husband in his business and farming operations by posting checks, assisting in installing a flow line on one of the oil wells, and taking care of newly born calves.

Marlys Knigge is required to take thyroid daily for a goiter problem and is unable to do any heavy lifting because of difficulties with her back.

Curtis Knigge was born in 1930. He has an eighth grade education. After his discharge from the U. S. Marine Corps in 1954, he worked in a gasoline service station in Newcastle, Wyoming. About the same time he became employed with an oil-drilling company as a roughneck. During the marriage, Curtis Knigge has also been employed as a car salesman, boat salesman, chemical salesman, oil well pumper, and as a dynamiter of oil pits.

In 1965 Curtis Knigge made the first of a series of purchases of marginal oil wells or fractional interests thereon together with the operating equipment thereon. It is the valuation of these oil wells which is a major issue in this litigation. Some of these oil well interests are held in the name of Curtis Knigge. The rest are owned by C & M Oil, Inc., a corporation whose stock is owned solely by the parties hereto. The wells in controversy are known in the trade as "stripper" wells. A stripper well is a well producing less than 10 barrels a day. At the time of trial, stripper oil was selling for $14.20 a barrel, whereas oil from wells discovered prior to 1970 producing more than 10 barrels a day was selling for $5.25 a barrel. There was testimony at the trial that, subse-

quent to the Arab oil embargo, operating equipment "doubled or tripled" in value.

During the marriage, the family also acquired a farm, the value of which is not in issue.

A detailed chronicle of the failure of the Knigge marriage would serve no purpose. However, to assert that Marlys Knigge was not permitted to squander the marital assets on frivolities would be a gross understatement. Marlys was required to purchase second-hand clothing for herself and the children. The family spent one winter in Kimball County with no blankets in the house. Emergency medical treatment for the children could not be obtained without Curtis' consent, which was not freely given. In one instance Curtis removed a cast from his daughter's broken arm in order to save money. The arm was never checked by the physician after the cast was removed. Against her wishes, Marlys Knigge was forced to live on the farm in a house with holes in the walls where the plaster was gone, with faulty plumbing, and with only two bedrooms for six people. During this period of time, the Knigge family acquired assets which the trial court found were worth $1,071,760 and which Curtis acknowledges on appeal were worth $782,919.

Paul H. Roberts, a petroleum engineer who is employed by the State of Nebraska Oil and Gas Commission, was hired jointly by the parties to appraise the oil wells. Both parties stipulated that they would rely upon and accept his appraisal as correct. This stipulation was accepted by the court; and the decree of March 3, 1978, which was later set aside by the order of modification of August 25, 1978, was based upon the Roberts appraisal.

Mr. Roberts appraised the fair market value of the oil interests of C & M Oil, Inc., at $176,267 and the value of Curtis Knigge's individually owned oil interests at $78,357. The Roberts valuation takes into consideration two factors on each well. The

equipment is valued at what it would sell for when the well stops producing. The oil itself is valued at fair market value of the reserves, considering that a purchaser would expect an annual 20 percent return on investment because of risk. The two valuations added together equal the fair market value of the working interest in a particular well as of the date of appraisal.

Although neither party objected to the Roberts appraisal, the trial judge in the order of modification of August 25, 1978, found: "* * * that the appraisal of working interests by Paul H. Roberts does not reflect their fair market value. I have determined the value by averaging the net profit per income tax returns for the year [sic] 1974, 1975 and 1976 and determining their value to be eight times earnings. This factor seems to be a legitimate one to determine value. The same procedure was used to determine the value of working interests in C & M Oil Company * * *."

On this basis the trial court valued the oil interests individually owned by Curtis Knigge at $248,000 compared to the Roberts appraisal of $78,357 and the oil interests of C & M Oil, Inc., at $236,000 compared to $176,267 in the Roberts appraisal.

There is nothing in the record to even suggest that capitalization of earnings is a valid method of valuing mineral interests. In employing this formula, the trial court completely disregarded estimated reserves and thus paid no attention to the life of individual wells. The income multiple also disregards the separate value of the equipment.

It has been held that valuation of mineral interests by capitalizing prior income does not reflect the market value and is an improper method of valuation because production of minerals is based on a declining asset and production is of an indefinite duration. So. Utah Mines v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004; Angle v. Board of

County Commissioners, 214 Kan. 708, 522 P. 2d 347.

It follows that the trial court's valuation of the oil interests at issue, which was completely without evidentiary support in the record and which was contrary to the stipulation of the parties with respect to the Roberts appraisal, was in error and must be set aside. In the absence of fraud or mistake, an agreement or stipulation by the parties that the judgment of a third person shall be relied upon in determining a fact is binding upon the parties. 17A, C. J. S., Contracts, § 498 (1), p. 731, at 732; 83 C. J. S., Stipulations, § 34, p. 88. There is nothing in the record to suggest fraud or mistake in the Roberts appraisal.

Therefore, the trial court's granting of Curtis Knigge's motion for a new trial and the order of modification which was entered on August 25, 1978, was in error and is hereby set aside. The decree of March 3, 1978, in which the court endeavored to make an equal division of the assets of the parties is reinstated as hereinafter modified.

It is well established that the fixing of alimony or the distribution of property rests in the sound discretion of the District Court and, in the absence of an abuse of discretion, will not be disturbed on appeal. Phillips v. Phillips, 200 Neb. 253, 263 N. W. 2d 447; Schmer v. Schmer, 197 Neb. 800, 251 N. W. 2d 167.

Generally, an award from one-third to one-half of the property involved in a marriage of long duration, and where the parties were the parents of all children involved, does not constitute an abuse of discretion. Baker v. Baker, 201 Neb. 409, 267 N. W. 2d 756; Grummert v. Grummert, 195 Neb. 148, 237 N. W. 2d 126; Kula v. Kula, 181 Neb. 531, 149 N. W. 2d 430. The trial court's decision to award Marlys Knigge one-half of the net assets of the marital estate finds support in the record and does not constitute an abuse of discretion.

In the "Decree on Property Division, Alimony and Child Support," the trial court made no specific find-

ing in regard to the value of the gas and oil interests owned by C & M Oil, Inc., or those owned by Curtis and Marlys Knigge. However, no specific finding was necessary in light of the court's decision to give each party an undivided one-half interest in all the gas and oil leases owned by C & M Oil, Inc., and the parties. The court found that the gross value of all other assets of C & M Oil, Inc., was $210,755; that the gross value of the Knigge assets (other than gas and oil leases) was $430,330; and that the total gross value of the non-oil-producing assets of the corporation and the parties was $641,085. On that basis, subject to certain deductions for liabilities and temporary allowances previously awarded, the trial court granted Marlys Knigge a judgment against Curtis Knigge in the sum of $320,542.50. In other words, the court divided the non-oil-producing assets of the parties and the corporation equally between the parties. This division of the assets is affirmed.

The decree is modified in the following particulars. Paragraph 10 (c) of the decree is amended to provide for interest at the rate of 6 percent per annum from March 3, 1978, rather than October 12, 1976.

Paragraph 8 of the decree provides: "The petitioner is awarded so much of the C & M Oil, Inc. stock as is necessary on a redemption of all of her shares to have distributed to her an undivided one-half of the interests in oil and gas leases owned by C & M Oil, Inc., together with like interests in the rights incident to and the personal property thereon * * *." Paragraph 8 should be amended to provide that the C & M Oil, Inc., stock shall be divided equally between the parties in order to provide that each shall have an undivided one-half of the interests in oil and gas leases owned by C & M Oil, Inc., and an undivided one-half interest in the personal property thereon.

The court further ordered that the individually

owned gas and oil leases should be divided by giving each of the parties an undivided one-half interest in each lease together with a one-half interest in the personal property thereon. This award is affirmed.

By reason of the equal division of the marital assets, no provision was made for alimony, which is also affirmed.

Curtis Knigge shall be required to account to Marlys Knigge for one-half of the net proceeds from oil runs from all leases from the date of the commencement of the dissolution action of October 12, 1976.

The original decree provides for payment of the judgment awarded Marlys Knigge in installments in order to satisfy the judgment and all accrued interest by March 1, 1980. We believe that this would place an undue financial hardship on Curtis Knigge. The trial court is directed to order the satisfaction of the judgment in 60 installments over the next 5 years.

In its decree the trial court attempted to anticipate tax consequences arising from a division of the marital assets. In Young v. Young, 200 Neb. 787, 265 N. W. 2d 666, this court stated, "The entire area of trial courts attempting to direct, or by implication to control, the determination of federal tax has been characterized as a 'Pandora's box' which the state Supreme Court should not open." Paragraph 18 of the decree provides: "This decree is premised on the basis that the income tax consequences are: (1) that the difference between respondent's basis and the fair market value of the stock in C & M Oil, Inc. awarded to the petitioner is long term capital gain to respondent; (2) that the difference between respondent's basis and the fair market value of the interests in the oil and gas leases owned by respondent and awarded to petitioner, which fair market value is shown by the appraisal of Paul H. Roberts in the evidence, with the exception of depreciation recap-

ture is long term gain to the respondent; (3) that petitioner's basis is the fair market value of the said stock and interests in the oil and gas leases; and (4) that the amount of the judgment awarded to petitioner in paragraph 10 is neither income to petitioner nor a deduction to respondent, and the parties shall file their income tax returns accordingly, and the court retains jurisdiction to modify this decree if the tax consequences turn out to be different than premised." For reasons stated in Young v. Young, *supra*, the decree of the trial court is modified by the elimination of the above provision.

Paragraph 10 (d) of the decree of March 3, 1978, provides that: "[T]here shall be deducted [from the judgment awarded Marlys Knigge] an amount equal to the difference between what the federal and state income taxes of C & M Oil, Inc. and the respondent are by reason of the awards and redemption ordered in paragraphs 8 and 9 above, and what they would have been if the awards and redemption ordered in paragraphs 8 and 9 above had not been ordered; * * *." This provision is amended to provide that additional tax liabilities resulting from a division of the stock in C & M Oil, Inc., and the individually owned oil and gas leases shall be borne equally by the parties.

Finally, Curtis Knigge asserts that the trial court erred in including certain assets owned by the Knigge children in the marital assets which were divided between the parties.

A review of the record indicates that the trial court was justified in including these assets among the marital assets for the purpose of determining the amount of the judgment to be awarded Marlys Knigge. The court did not attempt to determine ownership between Curtis Knigge and his children as to these assets. The court merely determined that these assets were to be considered in the division of marital assets.

The determination of one of the parties to a marriage to place property beyond the reach of the other party, and thus forestall a division of the property, does not operate to deprive the District Court of jurisdiction to determine an equitable division of those assets. Baker v. Baker, 201 Neb. 409, 267 N. W. 2d 756.

For reasons stated herein, the judgment of the trial court in entering an order of modification on August 25, 1978, is reversed; the decree of March 3, 1978, is affirmed as modified.

AFFIRMED AS MODIFIED.

CLINTON and WHITE, JJ., concur in the result.