ANN HAHN TAYLOR, APPELLANT, V. RICHERT TAYLOR, APPELLEE.

386 N.W.2d 851

Filed May 16, 1986.   No. 84-810.

Joseph B. Muller and D.C. Bradford of Bradford & Coenen, and Warren S. Zweiback of Zweiback, Flaherty, Betterman & Lamberty, P.C., for appellant.

Joseph K. Meusey and Kenneth W. Sharp of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Ann Hahn Taylor appeals the decree of the district court for Douglas County dissolving her marriage with Richert Taylor and claims that alimony decreed and her distributive share of the marital estate are incorrect. We affirm.

Ann, 30 years old and a widow with two children (ages 8 and 5), married Richert, age 37, in 1969. When she married Richert, Ann was a physician's assistant with inherited property which had an approximate value of $130,000. Ann was also the beneficiary of a testamentary family trust created by her first husband.

At his marriage to Ann, Richert had already developed a successful practice as an obstetrician and gynecologist; had $125,000 in bank accounts, including $100,000 in certificates of deposit held jointly with his parents; and owned $18,000 in securities and three tracts of real estate valued in the vicinity of $100,000.

Generally, assets brought into the marriage by Ann and Richert were not commingled with assets accumulated during their marriage. No child was born of the marriage between Ann and Richert. Ann's two children lived in the Taylor home. With the exception of limited activity as an interior decorator, Ann did not pursue a career outside the Taylor home, while Richert's work schedule usually consisted of 12-hour days, 7 days a week.

In 1979 Richert formed GYN-CYTO LAB, P.C., an incorporated laboratory business confined to reading Pap smears. As a sole practitioner in 1980, Richert incorporated his

medical practice as Richert J. Taylor, M.D., P.C., and is the sole shareholder of that professional corporation. In 1983 Richert's income from his medical practice was $305,390. In March 1984 GYN-CYTO LAB's balance sheet reflected a net worth of $78,816, and the balance sheet for Taylor's professional corporation showed a net worth of $230,466. Cash assets of Ann and Richert were derived from the medical practice, laboratory business, and securities owned separately or jointly during their marriage. Throughout Ann's marriage to Richert, the testamentary trust, from its accrued interest, made partial annual distributions of $5,200 to Ann and had $23,831 as accrued but undistributed interest available to Ann when the district court heard the Taylors' case. During their marriage, the parties had separated twice—once briefly in 1973 and for 15 months in 1978 and 1979. The parties' final separation commenced in August 1982. Ann filed a petition for dissolution in March 1983. In 1984, when the district court heard this matter, Taylors' home had a value of $241,500.

Ann testified about various items of her monthly living expenses, including mortgage payments on the family residence—$300; utilities—$435; real estate taxes—$258; and insurance on the family home—$167. Monthly expenses for her three automobiles totaled $450. Ann's children, who had reached their majority, did not permanently reside in the Taylor home at the date of the district court hearing for a decree of dissolution.

To establish a value for Richert's medical practice and GYN-CYTO LAB, Ann called an expert witness who gave his opinion based on a "capitalization of excess earnings" for Richert's professional corporation and laboratory. Essential to the opinion expressed by Ann's expert witness was the concept of excess earning power—"earning power that can be generated over and above what the average or normal person can do in his particular industry." Without referring to earnings of physicians in Omaha, Ann's expert computed Richert's "excess earning power," which was based on a national average for physicians, capitalized such amount, and determined that the "capitalized excess earnings" were $338,348 for Richert's medical practice and $106,253 for GYN-CYTO LAB. By

adding "net cash" and "accounts receivable" to the capitalized figures, Ann's expert valued Richert's medical practice at $573,335 and GYN-CYTO LAB at $182,695. Throughout his testimony, Ann's expert witness referred to "goodwill," namely, Richert's "good name, his capable staff and personnel, [and] his reputation for superior services." Ann's expert valued goodwill of Richert's medical practice at $338,348, a figure which another physician might pay for Richert's practice, provided that Richert would participate in some form of postsale transition, including personal introduction to Richert's patients and Richert's staying "around for a year."

An expert witness testifying for Richert rejected the notion of goodwill as an asset of any value in Richert's medical practice, noting "[w]hen the doctor is gone, the practice is gone." Richert's expert witness assigned values to the two professional businesses, namely, $78,816 for GYN-CYTO LAB and $230,466 for the medical practice as a professional corporation.

Richert testified concerning the certificates of deposit held jointly with his parents but did not offer any documentation to corroborate the existence or amount of such certificates. (The record lacks any indication that the Nebraska Discovery Rules were invoked to obtain documentation regarding such joint accounts.)

In its decree of dissolution the district court set off to each party a sum equal to the value of each party's assets brought into the marriage. As a setoff from the marital estate, Ann received cash and various items of personal property closely approximating the value of the assets owned before her marriage to Richert. To Richert the court set off $165,758 for Richert's premarital estate, specifically finding "that at the time of the marriage the value of [Richert's] CD's listed as held jointly with parents is $50,000.00." After the setoff to each party, the court determined that the net value of the marital estate was $1,194,945. The court found that GYN-CYTO LAB had a value of $78,816 and Richert's medical practice had a value of $230,466. The court ordered Richert to pay Ann "alimony in the amount of [$2,000] per month, for a period of sixty (60) months," and set over to Ann from the marital estate

various items of personal property valued at $71,194, as well as the family residence valued at $241,500. The $71,194 in personal property awarded to Ann included the value of three vehicles retained by her and $23,831—the accumulated but undistributed interest income held by the testamentary trust created by Ann's former husband. The court ordered distribution of the balance of the marital estate to Richert.

Ann contends that the alimony decreed is incorrect and that the marital property distributed to her is incorrect because (1) the court erred in determining the property to be set off to each party regarding the marital estate and (2) the court erred in the value determined concerning Richert's medical practice and GYN-CYTO LAB. Ann also argues that the court should not have included the joint certificates of deposit in the setoff to Richert, asserting that Richert's testimony about the certificates "cannot be accepted as a basis for any judicial conclusion." Brief for Appellant at 21. Ann does not maintain that any existing joint certificates should not have been part of Richert's setoff, but argues that Richert's testimony about the joint certificates was incredible and should have been disregarded by the court.

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .

> While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when

the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

Neb. Rev. Stat. § 42-365 (Reissue 1984).

[T]he division of property and the awarding of attorney fees in marriage dissolution cases are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. In our de novo review, where the evidence is in conflict, we will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another.

*Guggenmos v. Guggenmos,* 218 Neb. 746, 748-49, 359 N.W.2d 87, 90 (1984). See, also, *McCollister v. McCollister,* 219 Neb. 711, 365 N.W.2d 825 (1985) (award of alimony). "[W]e do not defer to the findings of the trial judge in determining whether there has been an abuse of discretion, but, rather, make our own appraisal of the record to determine whether the results obtained are untenable such as to have denied justice." *Guggenmos v. Guggenmos, supra* at 748, 359 N.W.2d at 90.

As a part of her complaint concerning the value of property set off to each party, that is, excluded as a party's property brought into the marriage, Ann asserts that the court should have disbelieved Richert's testimony about the certificates of deposit held jointly by Richert and his parents. As a result of such disbelief, Ann argues, the certificates of deposit must be included in the marital estate to be divided rather than set off to Richert. However, we dispatch Ann's contention by acknowledging that the district court "accepted one version of the facts rather than another." *Guggenmos v. Guggenmos, supra.* Notwithstanding the absence of corroborative documentation for the joint accounts, we find no abuse of discretion in the district court's excluding the certificates of deposit from Taylors' marital estate.

Concerning Ann's question about the amount of alimony decreed, Ann suggests the alimony is inadequate because the "parties enjoyed a high station in life." Brief for Appellant at 14. However, we evaluate the amount of such alimony in reference to the factors contained in § 42-365. In an alimony

decree a court should consider, in addition to the specific criteria listed in § 42-365, the income and earning capacity of each party as well as the general equities of each situation. See, *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984); *Carruth v. Carruth*, 212 Neb. 124, 321 N.W.2d 912 (1982); *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980). The ultimate test for determining correctness in the amount of alimony is reasonableness. *Gleason v. Gleason, supra*; *Pittman v. Pittman*, 216 Neb. 746, 345 N.W.2d 332 (1984); *Whitney v. Whitney*, 214 Neb. 565, 334 N.W.2d 799 (1983). Although one policy underlying § 42-365 is to "minimize any substantial and unnecessary disruption in the lives of the parties occasioned by reason of the dissolution of marriage," *Pyke v. Pyke*, 212 Neb. 114, 118, 321 N.W.2d 906, 909 (1982), that statute does not necessarily guarantee a spouse, by payment of alimony, the same standard of living as such spouse may have enjoyed during the course of the marriage. We do not believe that adequacy of alimony must be measured by the level or rate of spending displayed by the spouse seeking alimony. Again, the ultimate test for adequacy of alimony is reasonableness. Considering the factors affecting alimony in this case, we note that Richert had income of approximately $305,000 in 1983 and obviously has a significant earning capacity. Ann, on the other hand, is 45 years of age and has indicated she is capable of earning an income. Ann is educated, has worked in the interior decorating business, has adroitly retained substantial assets from her prior marriage, and is the beneficiary of a trust generating an average income of $5,200 a year. The alimony decreed is adequate for reasonably necessary expenses associated with Ann's continued maintenance under the circumstances. Consequently, we conclude that the alimony decreed does not constitute an abuse of discretion requiring reversal by this court.

Next, we address Ann's claim regarding the valuation of Richert's medical practice and GYN-CYTO LAB. Ann contends that every business has goodwill beyond its tangible assets. Before considering Ann's contention, we must reexamine the nature of goodwill.

"Good-will is the advantage or benefit which is acquired

by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

*Haverly v. Elliott*, 39 Neb. 201, 204, 57 N.W. 1010, 1011 (1894).

The preceding characterization of goodwill raises a fundamental question: When is goodwill an asset with value and, therefore, property to be judicially divided pursuant to § 42-365 in a dissolution proceeding?

Whether goodwill in a professional business organization may constitute property subject to division in a dissolution proceeding has produced a sharp division among several jurisdictions which have considered that question. Some courts have held that goodwill of a professional practice or business is a business asset with a determinable value—marital property subject to division in a dissolution proceeding. See, *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1 (1983); *In re Marriage of Foster*, 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974); *In re Marriage of Fenton*, 134 Cal. App. 3d 451, 184 Cal. Rptr. 597 (1982); *In re Marriage of White*, 98 Ill. App. 3d 380, 424 N.E.2d 421 (1981); *In re Marriage of Fleege*, 91 Wash. 2d 324, 588 P.2d 1136 (1979); *In re Marriage of Nichols*, 43 Colo. App. 383, 606 P.2d 1314 (1979); *Levy v. Levy*, 164 N.J. Super. 542, 397 A.2d 374 (1978). Other courts have held that professional goodwill does not constitute property and, therefore, is not considered in dividing a marital estate through a dissolution proceeding. See, *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982); *Holbrook v. Holbrook*, 103 Wis. 2d 327, 309 N.W.2d 343 (1981); *Nail v. Nail*, 486 S.W.2d 761 (Tex. 1972).

Virtually any income-producing entity, regardless of the nature of the business organization, may have an asset of recognized value beyond the tangible assets of such entity, an intangible asset generally characterized as goodwill. To the extent that such intangible asset's value results from recurrent

customer patronage, there is no question that goodwill is property which may be considered as a part of the marital estate for the purpose of a dissolution proceeding. See Family Law Comment, *The Recognition and Valuation of Professional Goodwill in the Marital Estate*, 66 Marq. L. Rev. 697 (1983). However, difficulty may arise in valuing a professional practice, because goodwill is likely to depend on the professional reputation and continuing presence of a particular individual in that practice. See Note, *Treating Professional Goodwill as Marital Property in Equitable Distribution States*, 58 N.Y.U. L. Rev. 554, 564 (1983) ("[p]rofessional goodwill has been viewed as inhering more in the individual than in the business, since it is the individual's service which is the 'product' offered to customers").

The particularized question becomes: Is professional goodwill, solely dependent on the presence of a specific individual, marital property within § 42-365 and subject to equitable division in a dissolution proceeding?

Courts answering that question in the affirmative have generally adopted a method of evaluation involving capitalization of excess earnings to determine the extent of goodwill as an asset in a professional practice; for example, in *Dugan v. Dugan, supra* at 439-40, 457 A.2d at 9-10, a New Jersey court suggested a capitalization of excess earnings method as follows: (1) "[A]scertain what [a professional] of comparable experience, expertise, education and age would be earning as an employee in the same general locale"; (2) Determine and average the professional's "net income before federal and state income taxes for a period of years, preferably five"; (3) Compare the "actual average" with the "employee norm"; and (4) Multiply the "excess" by a capitalization factor. See, also, *Levy v. Levy, supra*. When only a capitalization of excess earnings method of evaluation is applied to a professional practice, the value determined, characterized as professional goodwill, represents an entity's earning capacity but does not necessarily represent an asset which may be sold, transferred, or assigned.

Other courts have answered the question posed by rejecting professional goodwill as property. Illustrative is *Holbrook v.*

*Holbrook, supra* at 350, 309 N.W.2d at 354, where a Wisconsin court stated:

> The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

In *Nail v. Nail, supra* at 486 S.W.2d at 763-64, the court noted:

> The distinction has been drawn that professional good will is not so much fixed or as localized as the good will of a trade, and attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. [Citation omitted.]
>
> . . . [I]t cannot be said that the accrued good will in the medical practice of Dr. Nail was an earned or vested property right at the time of the divorce or that it qualifies as property subject to division by decree of the court. It did not possess value or constitute an asset separate and apart from his person, or from his individual ability to practice his profession. It would be extinguished in event of his death, or retirement, or disablement, as well as in event of the sale of his practice or the loss of his patients, whatever the cause.

See, also, *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982).

In *Andersen v. Andersen*, 204 Neb. 796, 798, 285 N.W.2d 692, 694 (1979), involving a consultant to lending institutions and real estate developers, we held:

> While earning capacity or expectations of income may properly be considered in an allowance of alimony, they are not proper considerations in determining the

appropriate division of property. [Citations omitted.] The court was in error in considering the unearned income of [Andersen] as a property capable of being divided and considered in its property division.

Consequently, where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of such business. On the other hand, if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding. As expressed in *Holbrook v. Holbrook*, 103 Wis. 2d 327, 351, 309 N.W.2d 343, 355 (1981): "There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value."

Accordingly, to be properly within the purview of § 42-365 as property divisible and distributable in a dissolution proceeding, we conclude that goodwill must be a business asset with value independent of the presence or reputation of a particular individual, an asset which may be sold, transferred, conveyed, or pledged. In so characterizing goodwill as marital property for the purpose of § 42-365, we neither state nor imply that goodwill, as a salable or marketable business asset, may never exist in a professional practice. See Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings*, 18 Fam. L.Q. 213 (1984). If a party produces appropriate evidence establishing salability or marketability of goodwill as a business asset of a professional practice, professional goodwill may be considered in determining value of property in a marital estate to be divided in a dissolution proceeding. Also, we do not reject in all cases capitalization of excess earnings as a method to

determine earning capacity.

As demonstrated in the present case, professional qualities of a practitioner are often critical to the existence and continuation of professional goodwill. Professional goodwill may be personal in nature and, therefore, not a readily salable or marketable item. Under such circumstances goodwill has no existence independent of the professional generating that goodwill. Ann's expert acknowledged that in a sale of Richert's practice, the purchasing physician would require some postsale association with Richert for introduction and transition of Richert's patients to the purchasing physician. In that case, return of patients would be reasonably attributable to Richert's presence after the sale and prospects of personal care and treatment from Richert. Because the goodwill for Richert's professional businesses depended on Richert's continued presence, there is a serious question whether goodwill, in its true sense, existed in the present case. See *Haverly v. Elliot*, 39 Neb. 201, 57 N.W. 1010 (1894) (characterization of goodwill). Here, there is a marked difference in the opinions of the expert witnesses concerning existence and value of goodwill inherent in Richert's medical practice through his professional corporation. Whether goodwill exists and whether goodwill has any value are questions of fact. See, *In re Marriage of Foster*, 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974); *Levy v. Levy*, 164 N.J. Super. 542, 397 A.2d 374 (1978); B. Goldberg, Valuation of Divorce Assets § 8.3 (1984). The opinions expressed by the expert witnesses in this case were diametrically opposed and resulted in a question of fact to be resolved. The district court heard the expert witnesses, viewed Richert's expert witness as the more credible, and gave more weight to testimony from Richert's expert witness. See *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). We agree with the district court in its conclusion resolving the conflict in testimony, namely, Richert's professional business did not have any goodwill as an asset constituting property to be divided in the Taylors' dissolution proceeding.

Next, Ann claims that, even if the valuations of Richert's practice and the laboratory are accepted, her share of marital property is incorrectly determined under § 42-365 (factors

affecting a reasonable division of marital property). In applying § 42-365 we have repeatedly held that the ultimate test for determining an appropriate division of marital property is reasonableness. See *Burger v. Burger,* 215 Neb. 699, 340 N.W.2d 400 (1983). Although generally adhering to a rule authorizing a property division between one-third and one-half, *Rockwood v. Rockwood,* 219 Neb. 21, 360 N.W.2d 497 (1985), and *Martin v. Martin,* 215 Neb. 508, 339 N.W.2d 754 (1983), we have been careful to state that a division of marital property is not subject to a precise mathematical formula but, rather, turns upon the circumstances of a particular case and, in particular, upon a careful case-by-case examination of the criteria set forth in § 42-365. See, *Rockwood v. Rockwood, supra; Choat v. Choat,* 218 Neb. 875, 359 N.W.2d 810 (1984). In *Koubek v. Koubek,* 212 Neb. 2, 321 N.W.2d 55 (1982), we affirmed a property award of considerably less than one-third of the net marital estate and stated that the general guideline of an award of one-third to one-half is of particular significance when "the marriage is of long duration and the parties are the parents of all the children involved." *Id.* at 5, 321 N.W.2d at 58; *Knigge v. Knigge,* 204 Neb. 421, 282 N.W.2d 581 (1979).

The net value of the Taylor marital estate, computed by the district court, was $1,194,945. Ann's share of the marital estate was approximately $313,000, or over 26 percent of the Taylor marital estate. Ann contends that $23,831, the undistributed interest income held by the testamentary trust, should have been set off and not included in the marital estate to be divided. Even if the $23,831 of undistributed trust income were set off before dividing the marital property, we are still unable to conclude that there was an abuse of discretion by the district court regarding the division of property decreed.

Ann and Richert were married for 14 years but were separated for significant periods during their marriage. Taylors had no child from their marriage, although Richert financially supported Ann's children by her prior marriage. Ann did not forgo a personal career or educational opportunity to provide for the domestic needs of the family and did not use any of the distributed trust income for Richert's benefit. Considering the factors or considerations itemized in § 42-365, we cannot

conclude that the district court's award of property was an abuse of discretion.

In our de novo review on the record concerning alimony and the property division decreed by the district court, we find no abuse of discretion by the district court. Therefore, the judgment of the district court is affirmed.

AFFIRMED.