IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

SHARP V. SHARP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID G. SHARP, APPELLANT,
V.
RHONDA JOEKEL SHARP, APPELLEE.

Filed April 9, 2013.    No. A-12-751.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Travis Thorne Bennington, of Bennington Law, for appellant.

John S. Slowiaczek and Jesse S. Krause, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

David G. Sharp appeals from the decree of dissolution entered by the district court for Douglas County. At issue in this appeal are the valuations of David's two medical practices and the district court's award of alimony and attorney fees. For the reasons set forth below, we do not find error in the district court's determination of the value of these practices or in the court's award of alimony and attorney fees.

FACTUAL BACKGROUND

David and Rhonda Joekel Sharp were married on June 20, 1992. During the course of their marriage, David and Rhonda had three children. On January 12, 2011, David filed a complaint for dissolution of marriage. Rhonda filed an answer and counterclaim to David's complaint. A temporary order was entered on April 6. The temporary order provided that David and Rhonda would have joint legal custody of their three children, with Rhonda appointed as the physical custodian and David having reasonable rights of visitation. Rhonda was allowed to remain in the family home, and David agreed to pay all expenses associated with the family home as well as other financial obligations of the parties during the pendency of the proceedings.

- 1 -

David was also ordered to pay Rhonda $2,000 per month. The youngest child of the parties passed away from cancer in December of that year. Following the sale of the marital home, a new temporary order was entered in March 2012, which required David to pay child support for two children of $3,000 per month and alimony of $2,500 per month.

Trial was held on April 16, 2012. The parties entered into a stipulation concerning custody and parenting time, and a partial agreement concerning property division. The fundamental issues at trial were the valuations of the two medical practices in which David had ownership interests, the amount of alimony due to Rhonda, and the amount of child support for the two remaining children. Both parties submitted evidence regarding these issues.

Rhonda was 46 years old at the time of trial. Rhonda has a bachelor of science degree from the University of Nebraska-Lincoln. Before having children, Rhonda taught elementary school in Nebraska for 7 years, leaving that position to move out of state for David's residency, and she then worked an additional 2 years in retail. Rhonda quit working when she and David started having children and has not worked outside the home since 1994. While married to David, Rhonda was responsible for caring for the home and their children. Due to her time away from teaching, Rhonda testified that it may take her up to 1½ years to become recertified. As of the time of trial, Rhonda had not begun taking classes toward recertification.

David was 47 years old at the time of trial. David is a practicing internal medicine physician and has an ownership interest in two medical practices: Doctors for Senior Health and Internal Medicine Physicians. David is the sole owner of Doctors for Senior Health. This entity has different components. One component is David's independent contract work as a certified medical director for various nursing homes. David's function is to see that quality care is being provided in the nursing homes, and he attends monthly meetings and works with the State to ensure the nursing homes meet the applicable standards. The nursing homes pay him a monthly stipend for this work. Doctors for Senior Health also contracts with a physicians' assistant who provides the bulk of the medical care at the assisted living facilities.

The other component of Doctors for Senior Health is David's contract with Member's M.D., a concierge medical practice. This company charges patients a yearly membership fee in exchange for more direct access to a physician than what may be normally available in a standard practice. This membership fee is in addition to the standard charges for office visits. David testified that he is "pioneering" this practice method in Nebraska. At the time of trial, David had 110 patients contracted with Member's M.D. and had begun devoting more of his time working at this part of his practice.

The record shows that Doctors for Senior Health has assets including cash, accounts receivable, a note receivable from David, leasehold improvements, office furniture and fixtures, and a vehicle.

Internal Medicine Physicians is a more traditional medical practice. When incorporated in 2006, Internal Medicine Physicians was composed of three partners, including David. In June 2009, one of the original three partners left the practice. A new third partner joined the practice in January 2011, and a fourth partner was added in January 2012. David claimed these partner additions were in the ordinary course of business and not influenced by the divorce proceedings. David testified that at the time of trial, he owned a 25-percent interest in Internal Medicine Physicians. David also testified that if he were to leave Internal Medicine Physicians, he would

only be paid $15,000 for his partnership interest as specified in the group's "Stock Restriction Agreement."

David and Rhonda disagreed as to the value of both entities and the amount of David's ownership interest in Internal Medicine Physicians. Therefore, prior to trial, both retained an expert to provide a present value for each practice. David's expert, Chris Best, determined David's interest in Doctors for Senior Health was valued in the range of $14,000 to $32,000. Best also determined David possessed a one-fourth interest in Internal Medicine Physicians and valued this interest at $100,000. Rhonda's expert, Luke Northwall, determined Doctors for Senior Health's value was approximately $380,000. Northwall also concluded that David had a one-half interest in Internal Medicine Physicians, which interest was valued at $228,000. Additional details of the expert evidence will be discussed in the analysis section below.

David and Rhonda's joint income tax returns from 2008, 2009, and 2010 were submitted in evidence at trial in order to establish David's income. Although David's income had decreased somewhat during this time period, his average yearly income for this 3-year period was approximately $450,000.

After taking the matter under advisement, the district court entered its decree of dissolution on July 27, 2012. Among its findings, the district court adopted Rhonda's expert's valuations for both Doctors for Senior Health and Internal Medicine Physicians. However, the court determined David possessed a one-third interest in Internal Medicine Physicians for purposes of the divorce proceedings. David was ordered to pay $3,570 per month in child support, $3,500 per month for a total of 114 months in alimony, and $15,000 of Rhonda's attorney fees. The court's decree also divided David and Rhonda's property and marital debts. After this division, David was ordered to make a $313,176.27 equalization payment to Rhonda.

## ASSIGNMENTS OF ERROR

David assigns three errors from the district court's decree of dissolution. David argues, restated, that the district court erred (1) in accepting Rhonda's expert's valuation for Doctors for Senior Health, (2) in computing the valuation for Internal Medicine Physicians, and (3) in awarding Rhonda excessive attorney fees and alimony.

## STANDARD OF REVIEW

An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id*.

When evidence is in conflict, an appellate court may consider and give weight to the fact that the lower court heard and observed the witnesses. *Id*.

ANALYSIS

*Valuation of Doctors for Senior Health.*

At trial, David and Rhonda both utilized expert witnesses who purported to give the present value of Doctors for Senior Health. Rhonda's expert, Northwall, is a certified public account who has spent the majority of his career doing business valuations. Northwall completed his report and valuation of Doctors for Senior Health on November 15, 2011. Northwall utilized a capitalization of earnings method to value David's stock, which is the method used to convert a level of benefits into present value. To apply this approach, the business' earnings are divided by a capitalization rate to determine its value. The capitalization rate is developed from market-based sources for comparable companies. Northwall testified that the capitalization of earnings method is one of three primary methods used within the context of business valuations.

Northwall valued David's 100-percent ownership interest in Doctors for Senior Health at $380,000. To arrive at this figure, Northwall first determined the net earnings of this entity in 2010 after subtracting a sum for officer's compensation. While the income statement for 2010 showed officer's compensation in 2010 was $60,552, Northwall testified that a more reasonable rate of compensation for David was $100,000 and that therefore, Northwall deducted this amount from the company's earnings, arriving at a net earnings figure of $100,687. Northwall then applied a capitalization rate of 26.52 percent to these earnings ($100,687 ÷ .2652 = $379,664), resulting in a rounded value of $380,000. Northwall did not use an asset-based approach in valuing Doctors for Senior Health because information relating to receivables and payables was not available. Northwall's report indicates that this method is used when the business being valued has no established earnings history, has a volatile earnings/cashflow history, has a questionable ability to continue without the infusion of additional cash investment, or can only be sold as an asset-based purchase.

David's expert, Best, is also a certified public accountant and has considerable experience valuing businesses and teaching business valuation methods. Like Northwall, Best also utilized a capitalization of earnings method when valuing Doctors for Senior Health, arriving at a rounded value of $104,000. In connection with this method of valuation, Best disagreed with Northwall's $100,000 adjustment for David's compensation as owner and instead utilized a higher figure of $176,000 for David's compensation, as such amount reflected the level of payment received by the independent contractor who was performing services similar to those which David provided.

Best also evaluated the business according to the adjusted net asset method by analyzing the company's balance sheet as of December 31, 2011. Using this method, Best arrived at a rounded value of $14,000. Best then reconciled the methods of valuation by concluding that the difference between the values, $90,000, represents the market value of the company's intangible assets, including goodwill. Best concluded that up to 20 percent of this $90,000 in intangible assets could be business goodwill, with the remaining amount personal goodwill. Taking all of this into account, and excluding the value of personal goodwill from his final valuation, Best calculated the value of Doctors for Senior Health to be in the range of $14,000 to $32,000 as of December 31, 2011. Best explained his decision to employ both methods was due to the nature of this business. From his investigation into Doctors for Senior Health, Best concluded there

could be a measure of personal goodwill involved in this entity due to the age of the business and the way the accounts were held.

Best was also critical of Northwall's valuation by virtue of Northwall's use of pre-income-tax earnings in his report and in his failure to add an adjustment for fixed asset replacements and additions.

Following Best's testimony, Northwall provided testimony regarding his own valuation and a review of Best's conclusions and testimony. Northwall testified that the source of greatest disparity between the two valuations under the capitalization of earnings method was the amount attributed for David's compensation in arriving at net earnings. He testified that the $176,000 adjustment Best made for David's compensation was questionable because the "business did not have enough cash to pay that out" without borrowing it, which he believed was unlikely to occur. In addition, David testified that this entity did not have the ability to pay him $176,000. On cross-examination, Best in fact testified that had he computed the net earnings with the $100,000 deduction utilized by Northwall, his valuation using the capitalization of earnings method would have increased by approximately $250,000.

In connection with Best's adjusted net asset valuation, Northwall also stated that Doctors for Senior Health had an $88,000 note payable from David which Best failed to take into account when valuing this business. Northwall claimed that if this $88,000 note had been added back into Best's adjusted net asset valuation, the professional practice goodwill issues would have been eliminated. Due to the wide yearly variance in past asset purchases, Northwall also testified that he could not conclude Best made a proper adjustment for fixed asset replacements in his valuation. Northwall believed this adjustment for fixed asset replacements changed the value of the business by $40,000. In his opinion, more detail was necessary before making such an adjustment.

On appeal, David argues that the trial court erred in adopting Northwall's conclusions when valuing Doctors for Senior Health. According to David, the income generated by Doctors for Senior Health is inextricably tied to his own labor and Northwall's report did nothing more than value his future labor. Pointing to the Nebraska Supreme Court's decision in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), and our decision in *Kricsfeld v. Kricsfeld*, 8 Neb. App. 1, 588 N.W.2d 210 (1999), David contends the trial court erred when it accepted Northwall's valuation of this business.

In *Taylor*, the husband was a physician with two professional corporations of which he was the sole shareholder. The wife's expert witness valued the businesses based on a "'capitalization of *excess* earnings.'" 222 Neb. at 723, 386 N.W.2d at 854 (emphasis supplied). This valuation was based on the concept of excess earning power--"'earning power that can be generated over and above what the average or normal person can do in his particular industry.'" *Id.* To arrive at this excess earnings figure, the expert witness computed the husband's "'excess earning power'" on a national average for physicians and referred to "'goodwill'" in his testimony as the husband's "'good name, his capable staff and personnel, [and] his reputation for superior services.'" *Id.* at 723-24, 386 N.W.2d at 854. The district court rejected the wife's expert's valuation, and the Nebraska Supreme Court ultimately agreed, finding no error in the failure to consider the goodwill associated with the husband's practice when determining its value as a marital asset. The court defined goodwill to be:

"'[T]he advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances, or even from ancient partialities or prejudices.'"

*Id.* at 727-28, 386 N.W.2d at 856-57 (quoting *Haverly v. Elliot*, 39 Neb. 201, 57 N.W. 1010 (1894)). The court concluded that goodwill is not a marketable asset distinct from the individual if the goodwill depends on the continued presence of a particular individual. *Taylor, supra.* On the other hand, the court found that if goodwill is a business asset with value independent of the presence or reputation of a particular individual, it may be characterized as divisible marital property. *Id.* In addition, the court specifically did not reject in all cases capitalization of excess earnings as a method to determine earning capacity. *Id.*

In *Kricsfeld, supra*, this court considered whether the value of a covenant not to compete in connection with a professional practice should be included as marital property. In that case, we found the rationale of *Taylor* to be decisive on the issue. We concluded that the value of a typical covenant prohibiting or restricting an individual from competing with another is, by definition, dependent upon the presence or reputation of the individual who gives the covenant. *Kricsfeld, supra*. Thus, we held that to the extent the value of a covenant not to compete is solely dependent on the presence or reputation of an individual, it is not a marital asset. *Id.*

We disagree with David's assertion that this case is similar to both *Taylor* and *Kricsfeld* or that Northwall's valuation included personal goodwill. Northwall did not utilize a capitalization of *excess* earnings method as did the expert in *Taylor*, nor did Northwall assign value as goodwill based upon David's presence or reputation. Rather, Northwall used the capitalization of earnings method based upon the actual earnings of Doctors for Senior Health, although adjusted somewhat to reflect a more reasonable level of compensation for David. Best also used the capitalization of earnings method to begin his analysis, although he used a higher level of compensation for David in his computation. Northwall testified that the capitalization of earnings method is one of the primary methods used to value a business. Further, Northwall explained that the "goodwill" figure calculated by Best, which was arrived at by comparing Best's capitalization of earnings value and his adjusted net asset value, could be eliminated by properly addressing a note receivable.

It has been recognized that the method of valuation used for a closely held corporation must have an acceptable basis in fact and principle. See *Shuck v. Shuck*, 18 Neb. App. 867, 806 N.W.2d 580 (2011). Based on this record, we cannot say that Northwall's method of valuation of Doctors for Senior Health did not have an acceptable basis in fact and principle.

As fact finder, the district court heard each party's expert witness, considered their relative conclusions and credibility, and chose to accept Northwall's valuation of Doctors for Senior Health. The determination of the weight that should be given expert testimony is uniquely the province of the fact finder. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012). After our review, we do not believe the district court erred in adopting Northwall's valuation of Doctors for Senior Health.

*Valuation of Internal Medicine Physicians.*

David also contends that the district court made a mathematical error when valuing his interest in Internal Medicine Physicians. However, he does not contend the district court erred in accepting Rhonda's expert's valuation of Internal Medicine Physicians at $456,000. Rather, David claims there was undisputed evidence that he only owned a one-fourth interest at the time of trial and his interest should have been computed accordingly.

At trial, Best valued this entity at approximately $400,000 and concluded that David's one-fourth interest was valued at $100,000, based upon the partnership status at the time of trial. Northwall valued the entity at $456,000 and concluded that David's one-half interest was worth $228,000, based upon his understanding of David's partnership status in 2010, which was the most recent and complete information he had at the time he prepared his valuation report.

In addition to these expert reports, David provided testimony regarding the structure of Internal Medicine Physicians. He initially testified that Dr. Mark Oberlies joined the practice in January 2010, but not as a full partner. David added that Oberlies was later made a full partner retroactive to January 2010. Dr. Thomas Vinton was added as a fourth partner in January 2012.

On cross-examination, however, David testified that Oberlies did not join the practice until January 2011. David also testified that Oberlies had not yet started to make payments on his partnership interest. Later, David admitted he had a one-third interest in Internal Medicine Physicians as of December 31, 2011. David also conceded that his expert valued this practice as of December 31, 2011. And, we note that Northwall completed his report and valuation for this entity on November 15, 2011.

The district court accepted Northwall's valuation of Internal Medicine Physicians of $456,000 and, in the balance sheet attached to the decree, found that David owned a one-third interest in this entity for purposes of these proceedings. The district court accordingly assigned the value of $152,000 to David, which is one-third of the total value. Thus, there is no mathematical error as argued by David. And, for the sake of completeness, we conclude that the district court's implicit decision to value the business prior to the addition of the fourth partner at the time of trial is rationally related to determination of the valuation of this entity and was not an abuse of discretion. See *Gohl v. Gohl*, 13 Neb. App. 685, 700 N.W.2d 625 (2005) (in valuing marital assets in divorce action, there is no hard and fast rule concerning valuation dates so long as selected date bears rational relationship to property to be divided and selected date is reviewed for abuse of discretion).

Therefore, we find no error in the district court's determination of the value of David's interest in Internal Medicine Physicians, and this assigned error is without merit.

*Award of Attorney Fees and Alimony.*

In his third assignment of error, David contends the district court erred when it awarded Rhonda alimony and attorney fees. The court awarded Rhonda alimony in the amount of $3,500 per month for 114 months. The court also awarded Rhonda $15,000 in attorney fees. David argues that because Rhonda received a substantial amount of liquid assets in the property division, "the length and amount of alimony awarded against him at trial was unreasonable and should be reversed." Brief for appellant at 11.

With regard to alimony, Neb. Rev. Stat. § 42-365 (Reissue 2008) provides in pertinent part:

When dissolution of marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In addition to the specific criteria listed in § 42-365, in dividing property and considering alimony upon a dissolution of marriage, a court is to consider the income and earning capacity of each party as well as the general equities of each situation. *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Id*. However, disparity in income or potential income may partially justify an award of alimony. *Id*. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id*.

Rhonda and David were married for nearly 20 years. David was the sole source of income for the family while Rhonda took care of the family home and their three children. Additionally, Rhonda has been out of the workforce for nearly 17 years and will require further education to become recertified as a teacher. David, on the other hand, has a very lucrative medical practice and earns significant income from his businesses. Each party received a net award of approximately $600,000 in the division of the marital estate.

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Patton*, *supra*. After our review of the facts of this case in light of the factors involved in an alimony award, we find the district court did not abuse its discretion in awarding Rhonda alimony in the amount of $3,500 per month for 114 months.

We need not address David's argument that the district court's award of attorney fees was excessive. Although David assigns this as error in his brief, there is no accompanying argument. As has long been the case, errors that are assigned but not argued will not be addressed by an appellate court. *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012).

CONCLUSION

The district court did not err in its valuation of Doctors for Senior Health or Internal Medicine Physicians. Further, the court's alimony award was not an abuse of discretion. Therefore, we affirm the district court's decree in all respects.

AFFIRMED.