BRANDON J. HARRISON, Judge, dissenting. The circuit court’s corporate-goodwill determination is the crux of this case. We have previously recognized that a goodwill determination is a fact-intensive inquiry. Cummings v. Cummings, 104 Ark.App. 315, 323, 292 S.W.3d 819, 824 (2009). Here, the circuit court heard testimony and argument on the goodwill issue and concluded that it was not persuaded that the goodwill Peter argued for was personal rather than corporate. That decision was based on the proof and the court’s credibility determinations; we should not disturb it. But it has been disturbed, in part, I believe, because the majority did not view all the evidence in a light most favorable to Marie, as our standard of review requires. Here’s the standard that should drive the decision-making process in this divorce case. We review the entire record anew: We defer to the superior position of the circuit court to assess the credibility of witnesses and the weight it should give their testimony. Taylor v. Taylor, 369 Ark. 31, 41, 250 S.W.3d 232, 240 (2007). We do not reverse the court’s findings of fact unless they are clearly erroneous or against the preponderance of the evidence. A | fifmding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. See id. Because the majority does not properly apply our standard of review in this appeal, I respectfully dissent. Consider the selective reliance on Gus Dobbs’s testimony. The majority notes that Dobbs favorably testified for Peter’s personal-goodwill argument in some respects. Dobbs, who was admittedly not a business-evaluation expert but a tax advis- or, used an “income approach” to value the goodwill associated with Marie’s and Peter’s business. The number he deduced was $819,057. He said the business has no equity without goodwill. But Dobbs also testified that his calculations were based on the restaurant’s value as an ongoing business with — of all things — a replacement chef for Peter. And as the majority notes but does not permit the circuit court to credit, Dobbs testified that he could not say whether the restaurant’s goodwill was corporate or personal. Moreover, when Marie’s lawyer asked Dobbs about his statement that “the whole business is [Peter’s] personality” Dobbs agreed that the restaurant would not suffer if Peter stepped away for two weeks. He then said, “Well, it might make it two months.” Next came this exchange between Dobbs and Marie’s lawyer: Marie’s Counsel: If he [Peter] was away for two years, what would happen to the goodwill of this business? Dobbs: Well, goodwill is something that is an intangible asset and it depreciates over time, and that’s why buyers when they come in to buy a business look at the goodwill number, and they know that they can’t maintain that necessarily over a period of time, so they look at it from that standpoint. |7When questioned by Peter’s attorney, Dobbs said: That restaurant has one of the most unique operators in it I’ve ever seen.... It is a unique operation that’s been built in a location that nobody can find real easy. So yes, he would be very difficult to replace, and that was my most difficult decision to make, what number do you plug in there to replace Peter Brave. The material point is not that the location of the restaurant has little or nothing to do with personal goodwill, but that Dobbs never said that the restaurant could not go on without Peter. A main aspect of personal goodwill associated with a business, however, is that the personal goodwill is not saleable and the business cannot survive if the so-called key person is cleaved from it. Dobbs’s own testimony therefore directly undermined Peter’s personal— goodwill argument — or so the circuit court could have reasonably concluded, and in fact did. There’s no denying that the circuit court looked to Dobbs. “[Peter] has built up goodwill. Whether someone could come in and step into his shoes is a little bit hard to say, but I’m taking your witness [Dobbs],” said the court from the bench. What the court meant precisely by this statement is unclear. So we return to the written order, which tells us that whatever the merit of the witnesses’ and parties’ testimony, the circuit court as fact-finder ultimately rejected the personal-goodwill argument. And it did so because the record contained, in its judgment, insufficient proof that the goodwill was personal rather than corporate; or conversely, the record provided sufficient proof that the goodwill was corporate, not personal. Dobbs was not the only one who testified about the restaurant’s worth. Two nationally-certified, business-appraiser experts valued the restaurant using several different 18methods, including the same “income approach” Dobbs used. That the court did not mention these other experts in its order or divorce decree does not necessarily mean it ignored them. But even if all other experts were ignored, Dobbs himself could not, as the majority acknowledges, delineate between corporate and personal goodwill and assign each a value; how then was the circuit court supposed to do so? Consider, too, what the court stated at the trial’s end: “the loss of Mr. Brave to that restaurant would be very, very damaging. But as long you could still call it Brave New Restaurant, as long as it was still there, as long as they still had the menu, people would come for a while.” The court did not come unmoored from the record in finding that the restaurant could continue without Peter. There was testimony that Peter vacationed for weeks at a time, having trained other employees to manage the restaurant in his absence. Peter told the court that he could “delegate the daily operational stuff.” And he had trained his sous chef to “mimic everything wonderfully.” Peter’s staff in general can recreate his food creations. He also said, “I do need to kind of wean myself from [the restaurant] also and I guess by doing that I can go ahead and start working and making it a little bit more anonymous.” There is more. As the majority notes, the Braves were married when they started the business in the early 1990s. Marie was then and has remained a 50% shareholder in the closely-held corporation. According to Dobbs, Marie had equal legal power to make decisions, cut checks, and run the business, just as Peter did. Peter also agreed that Marie was the one who has kept up largely with the company’s finances. She has also held the |flrestaurant’s liquor license, received a salary from the restaurant during the marriage, did some bookkeeping, and worked there sporadically. Yet, under the majority’s view she receives no direct monetary benefit from the restaurant upon the dissolution of her marriage. In 1987 Arkansas courts began recognizing personal/professional goodwill in divorce cases where the business entity was a professional association and the party claiming “personal” or “professional” goodwill was the husband who was a licensed professional with a heavy referral-type practice. See Williams v. Williams, 82 Ark.App. 294, 108 S.W.3d 629 (2003) (gastroenterology-surgery practice); Tortorich v. Tortorich, 50 Ark.App. 114, 902 S.W.2d 247 (1995) (oral-surgery practice); Wilson v. Wilson, 294 Ark. 194, 741 S.W.2d 640 (1987) (orthopedic-surgery practice). In each of these cases, the husbands owned a part or all of the professional association, and the wives could not have lawfully owned an interest in the entity because they were not themselves licensed professionals. See 1963 Ark. Acts 155, § 14 (now codified at Ark.Code Ann. § 4-29-208 (Repl.2001)). One more historical doctrinal point. Our short line of professional-goodwill eases stems directly from one Nebraska Supreme Court opinion, Taylor v. Taylor, 222 Neb. 721, 729, 386 N.W.2d 851, 857 (1986). This has some importance because, in Taylor, before the Nebraska Supreme Court recognized goodwill in the professional context (a doctor’s practice was at issue there), the supreme court noted that the intangible value businesses have due to patronage “may be considered as a part of the marital estate for the purpose of a dissolution proceeding^]” The supreme court then recognized that professional practices were a special class of cases given the particular “difficulty [that] may arise in valuing a professional practice, |inbecause goodwill is likely to depend on the professional reputation and continuing presence of a particular individual in that practice.” Id. So the Nebraska opinion that started Arkansas down its professional-goodwill path acknowledged that most commercial enterprises, including their related goodwill, would typically fall within Nebraska’s marital-property statute. Here, the majority provides no legal reason why Arkansas’s marital-property statute should not apply in the usual sense except to rely on one narrow, sui generis class of professional-practice cases — which it today expands significantly, while reversing a circuit court’s fact-intensive determination on a disputed evidentiary record, and when using one of this court’s most deferential standards of review. Finally, I wonder about the utility and fairness of the decision to remand this case to the circuit court so it may determine “what portion of BNR’s value was personal goodwill.” How is the circuit court to do now what it could not do before? At the hearing on Peter’s posttrial motion the court said, “[T]he testimony ... [on] valuation is not helpful, in my opinion, to the [personal goodwill] argument.” The circuit court then explained that the valuation testimony consisted of assessments of what the restaurant would sell for on the open market. “[H]onestly, since it was put on by Mr. Brave, I mean, I assumed that it was more or less agreed to. Now, I understand the argument that some of all the goodwill might be personal, but I don’t have any business — any way to allocate it.” My concluding point is this: Peter had his chance to establish personal goodwill and its worth through Dobbs (or anyone else) the first go around. He failed to do so. And even if Marie had the burden to prove that | nthe restaurant’s value was corporate goodwill rather than personal goodwill, she did so to a sufficient degree when our standard of appellate review is properly applied.