Tony TORTORICH *v.* Pam TORTORICH

CA 94-298                                                    902 S.W.2d 247

Court of Appeals of Arkansas
En Banc
Opinion delivered June 28, 1995

115

116

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Sam Hilburn* and *Dorcy Kyle Corbin*, for appellant.

*Linda D. Shepherd, P.A.*, and *Claibourne W. Patty, Jr.*, for appellee.

JOHN B. ROBBINS, Judge. This is an appeal from a decree of divorce from bed and board entered by the Pulaski County Chancery Court on December 15, 1993. The case arose in December 1992 when appellee Pam Tortorich filed her complaint seeking separate maintenance from appellant Tony Tortorich, who counterclaimed for divorce. In September 1993, Pam Tortorich amended her complaint to request a divorce from bed and board which was eventually granted by the court on December 15, 1993. Tony Tortorich's counterclaim for absolute divorce was denied and dismissed. Although on May 24, 1995, we affirmed a later order of contempt entered by the trial court in this matter, it is not part of the present appeal.

After Pam graduated from Arkansas State University in the spring of 1978 with a degree in Business Education, the parties married in January 1979. Tony, who also graduated from Arkansas State University, began his four years of dental school at the University of Tennessee in Memphis shortly after the parties married. The parties eventually had three children during their marriage: Joseph, age twelve; Jordan, age nine; and Andrew, age five. In 1986, Tony opened his oral surgery practice which he incorporated in 1987 under the name "Anthony L. Tortorich, D.D.S., P.A." The value of this professional association is the primary focus of the present appeal.

Appellant Tony Tortorich raises the following issues on appeal: (1) the trial court erred in its valuation of Anthony L. Tortorich, D.D.S, P.A.; (2) the trial court erred in ordering him to pay all of Mrs. Tortorich's expert witness fees in excess of six thousand ($6,000) dollars; (3) the trial court erred in setting alimony and child support; (4) the trial court erred in failing to limit the duration of its order to the time the decree is in effect; (5) the trial court erred in ordering him to pay one-half of Mrs. Tortorich's attorney's fees; and (6) the trial court erred in awarding Mrs. Tortorich one-half of his 1993 bonus. We reverse and remand in part and affirm in part.

Dr. Tortorich first contends that the trial court erred in its valuation of his professional association. He specifically contends that the trial court erred in finding there was approximately $180,000 of business goodwill in Anthony L. Tortorich, D.D.S., P.A. He argued before the trial court, and now argues on appeal, that *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987), is applicable and controlling, and required the trial court to find that his oral surgery practice had no business goodwill. We agree and reverse on this point.

Richard Schwartz, a certified public accountant, testified as Mrs. Tortorich's expert witness on the value of Dr. Tortorich's professional association. Mr. Schwartz testified at length concerning his basis for arriving at a figure of approximately $180,000 for business goodwill. Mr. Schwartz testified on cross-examination that he considers goodwill to be "the capability of that business to generate, through patronage of those customers or patients, that excess earnings which develops the value of goodwill." He

went on to testify that "goodwill is earned as a relationship of continuation of that practice which generates above average earnings." Mr. Schwartz admitted on cross-examination that Dr. Tortorich obtains "most of his patients through referrals" from other dentists. Testimony indicated that because Dr. Tortorich is an oral surgeon whose primary practice is tooth extraction he has very few repeat patient visits compared to those of a regular dentist.

Mr. Schwartz based his opinion of the value of the professional association primarily on the adjusted book value of the association's tangible assets, and goodwill asertained by a capitalization of "excess earnings." The capitalization of "excess earnings" method of evaluation was explained by Mr. Schwartz to involve computing a weighted average of Dr. Tortorich's net operating income in excess of the net operating income of an average oral surgeon over the preceding three-year period. The resulting difference, capitalized at 40%, would represent the value of Dr. Tortorich's goodwill.

Mr. Schwartz said that he referred to comparable sales as a reality check on his evaluation amount. Of the comparable sales, however, Mr. Schwartz acknowledged that none were in Arkansas; some were combination general dentist/oral surgeon practices; he could not testify that the comparables did not include office buildings; and he did not know whether the practices sold had one, two or three dentists. Mr. Schwartz further acknowledged that if he were an oral surgeon who was purchasing Dr. Tortorich's practice, he would want Dr. Tortorich to continue working for the professional association for six months after the purchase, and to have a "no compete" agreement from Dr. Tortorich.

Keith Crass, also a certified public accountant, testified that he found Dr. Tortorich's professional association had no goodwill because his practice is highly personalized and its revenues are generated from Dr. Tortorich's personal skills. Testimony showed that 80% of Dr. Tortorich's revenues were derived from the extraction of wisdom teeth; consequently most of his patients do not have repeat visits. Mr. Crass corroborated Mr. Schwartz's testimony and stated that 90% of appellant's patients are new patients who are generally referred from other dentists. Mr. Crass went on to testify that the primary reason he considered this particular practice to have no goodwill is because Dr. Tortorich has

no continuing patient base, or continuing customers so to speak, that an interested buyer would be willing to purchase. Mr. Crass distinguished Dr. Tortorich's oral surgery practice from a pediatrician's practice. Mr. Crass testified there was goodwill in a pediatrician's practice because children tend to return to the same doctor for care throughout their childhood years; thus, the pediatrician has a continuing relationship with his client base.

The chancellor observed that Mr. Schwartz had much more expertise in the valuation of professional associations and closely held corporations than Mr. Crass. The chancellor found that because this valuation was not based on Dr. Tortorich actually selling his practice and going "to Havana," that the valuation was reasonable. The chancellor concluded that the professional association had a value of $240,000.00 and ordered Dr. Tortorich to pay half of that amount to Mrs. Tortorich. Of the $240,000.00 value placed on the oral surgery practice, approximately $180,000.00 was goodwill.

In *Wilson* v. *Wilson, id.*, the supreme court defined the type of goodwill which would be considered marital property. *Wilson* involved facts very similar to those in the present case. In *Wilson*, the parties were married during the husband's attendance at medical school. Their marriage lasted for approximately eighteen years during which time Dr. Wilson began his practice as an orthopedic surgeon and eventually was hired by Orthopedic Associates, Inc.

In the course of setting a value for Dr. Wilson's interest in Orthopedic Associates, Inc., the supreme court held that, although the prevailing view was that goodwill of a professional association or business is marital property subject to division, certain factors must be considered in determining whether the goodwill is actually a business asset. The supreme court adopted the Nebraska Supreme Court's position regarding goodwill as set forth in *Taylor* v. *Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), and quoted from that opinion:

> [W]here goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected

in a sale or transfer of such business. On the other hand, if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding.

*Wilson* v. *Wilson*, 294 Ark. at 205, 741 S.W.2d at 647 (quoting from *Taylor* v. *Taylor*, 222 Neb. at 731, 386 N.W.2d at 858).

The supreme court in *Wilson* went on to hold that:

We believe the view expressed in *Taylor* is a sound one, and conclude that, for goodwill to be marital property, it must be a business asset with value independent of the presence or reputation of a particular individual — an asset which may be sold, transferred, conveyed or pledged. Thus, whether goodwill is marital property is a fact question and a party, to establish goodwill as marital property and divisible as such, must produce evidence establishing the salability or marketability of that goodwill as a business asset of a professional practice.

*Wilson*, 294 Ark. at 205-06, 741 S.W.2d at 647.

While we agree with the chancellor's finding that Mr. Schwartz's testimony was persuasive to an extent, we fail to find any evidence that Dr. Tortorich's professional association had "value independent of the presence or reputation of [this] particular individual — an asset which may be sold, transferred, conveyed, or pledged."

Dr. Tortorich is a sole practitioner whose personal skills developed his reputation with other dentists. Dr. Tortorich's practice, as the evidence clearly showed, was almost wholly dependent on referrals from other dentists who referred patients to him based on his reputation alone. Without the presence or reputation of this particular individual the oral surgery practice had no value independent of its tangible assets. The chancellor adopted Mr. Schwartz's opinion of the goodwill value of Anthony L. Tortorich, D.D.S., P.A., and held that this goodwill had a value

of approximately $180,000 and was a marital asset. It appears that Mr. Schwartz arrived at his opinion by capitalizing the above average net income Dr. Tortorich has been able to generate in his practice. This does not, however, purport to distinguish the superior personal earnings capacity of Dr. Tortorich from any goodwill of the professional association independent of his continued presence and reputation. Upon our de novo review we conclude that the value of Dr. Tortorich's P.A. is $61,086 and that it has no goodwill value independent of Dr. Tortorich's presence and reputation. We do not hold, as suggested in the dissenting opinion, that a solo professional practice can never have business goodwill independent of the personal goodwill of the practitioner. We simply hold that pursuant to *Wilson*, Mrs. Tortorich had the burden of proving that Dr. Tortorich's professional association had business goodwill independent of Dr. Tortorich's personal goodwill if it was to be considered a marital asset. This she failed to do. The chancellor's finding to the contrary was clearly erroneous and is reversed.

Dr. Tortorich secondly contends that the trial court erred in ordering him to pay all of Mrs. Tortorich's expert witness fees in excess of $6,000. Mrs. Tortorich essentially concedes that, if we reverse on the first point, Mr. Schwartz's fee should also be remanded for reconsideration. While we are aware that the chancellor also considered Mr. Schwartz's time spent in tracing assets as part of her basis for awarding this recovery, we reverse and remand on this point for the chancellor to reevaluate the award in light of our above holding. *See Yockey* v. *Yockey*, 25 Ark. App. 321, 758 S.W.2d 421 (1988).

For Dr. Tortorich's third point on appeal he contends that the chancellor erred in setting alimony and child support, contending that the amounts set were excessive because of Mrs. Tortorich's ability to earn a living and the children's actual needs. The chancellor awarded Mrs. Tortorich $1000 per month as alimony. She considered the correct factors in making this determination.

The award of alimony is a matter which addresses itself to the sound discretion of the chancellor, and the award will not be reversed absent an abuse of discretion. *Harvey* v. *Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). *Wilson* v. *Wilson, supra.*

While we find that the chancellor's award of alimony was not an abuse of discretion, the division of marital assets must be considered in setting alimony. Because we are reversing a substantial award which the chancellor made to Mrs. Tortorich for the goodwill of Dr. Tortorich's professional association, we reverse and remand the award of alimony to enable the chancellor to reconsider the appropriate amount of alimony. *See Harvey* v. *Harvey, supra; Womack* v. *Womack,* 16 Ark. App. 139, 698 S.W.2d 306 (1985).

The chancellor awarded child support in the amount of $6,000 per month for the three children. She based her decision on the Family Support Chart applicable at the time of the opinion. *See* Ark. Code Ann. § 9-12-312(a)(2) (Supp. 1993). The chancellor determined, based on expert testimony, that Dr. Tortorich's net monthly take home pay was in excess of $18,000, and that 32% was the appropriate rate of support pursuant to the Family Support Chart.

Dr. Tortorich argues on appeal that certain living expenses alleged by Mrs. Tortorich were inflated or even non-existent. He also contends that the amount awarded as support far exceeds the amount of money the children actually need for living expenses.

The Family Support Chart is to be used as a guide and is not binding on the chancellor. A chancellor's finding as to child support will not be disturbed on appeal unless it is shown that the chancellor abused her discretion. *Belue* v. *Belue,* 38 Ark. App. 81, 828 S.W.2d 855 (1992). While we review chancery cases de novo on appeal, the findings of the chancellor will not be reversed unless clearly against a preponderance of the evidence. *Roark* v. *Roark,* 34 Ark. App. 250, 809 S.W.2d 822 (1991).

The chancellor referred to the Family Support Chart and Dr. Tortorich's income to arrive at her conclusion that Mrs. Tortorich was entitled to $6,000.00 per month for child support. The chancellor noted in her decision that Dr. Tortorich contended he needed $4,200.00 per month for his expenses, while at the same time contended that the three children did not need $6,000.00 each month for their combined expenses. The chancellor stated that Dr. Tortorich failed to establish a reason for deviating from the Family Support Chart. We do not find that the chancellor

abused her discretion in setting the amount of support for the children and affirm on this point.

■■ Dr. Tortorich contends in his fourth argument that the trial court erred in failing to limit the duration of its order to the time the decree is in effect. Specifically he argues that the chancellor should have considered the possibility that an absolute divorce may later be granted the parties which would supersede this decree of divorce from bed and board. Consequently, he contends that the award of possession of the marital home to Mrs. Tortorich until the parties' youngest child attains the age of eighteen, without mentioning the possibility of supersession by decree of absolute divorce, was error. However, in the first sentence of his argument he correctly notes, "this court may determine that this issue is not ripe for review. . . ." Support and custody matters are always open to review and this issue is not ripe for consideration at this time. We consider this question to be academic in nature and it is contrary to our practice to issue advisory opinions. *Wright* v. *Keffer*, 319 Ark. 201, 890 S.W.2d 271 (1995).

In his fifth point on appeal Dr. Tortorich contends that the trial court erred in ordering him to pay one-half of Mrs. Tortorich's attorney's fees. As noted by Dr. Tortorich, the chancellor ordered him to pay one-half of Mrs. Tortorich's attorney's fees prior to her presenting evidence of the total amount of attorney's fees which she incurred.

■■ Our courts have recognized the inherent power to award attorney's fees in domestic relations proceedings. *Price* v. *Price*, 29 Ark. App. 212, 780 S.W.2d 342 (1989). The chancellor's authority to award attorney's fees in divorce actions and the amounts of such awards are matters within the discretion of the chancery court. *Id.* However, in the present case the chancellor appears to have ordered Dr. Tortorich to pay one-half of Mrs. Tortorich's attorney's fees without knowledge of the sum those fees would total. Where the chancellor did not know what the amount of the fees would be at the time they were awarded, we must find not an abuse of discretion but a failure to exercise her discretion. *See Quinn* v. *State*, 25 Ark. App. 33, 751 S.W.2d 363 (1988). We reverse the award of attorney's fees to Mrs. Tortorich and remand for the chancellor to exercise her discretion on this issue.

Dr. Tortorich's final argument on appeal is that the chancellor erred in awarding Mrs. Tortorich one-half of his 1993 bonus. He argues that the amount awarded Mrs. Tortorich failed to give credit for his payment of certain expenses which benefitted both parties. As Mrs. Tortorich correctly points out, Dr. Tortorich attempts to read certain things into the decree and findings of the chancellor which are simply not present.

Under Ark. Code Ann. § 9-12-315 (1993), the chancellor has the authority to divide one-half of the marital property to each party. This bonus clearly accrued during the parties' marriage and Dr. Tortorich fails to cite any evidence to the contrary. A bonus accrued during the marriage is marital property subject to division. *Wilson* v. *Wilson, supra.* We find that the chancellor did not abuse her discretion in awarding Mrs. Tortorich one-half of the 1993 bonus.

Affirmed in part; and reversed and remanded in part.

BULLION, S.J., agrees.

COOPER, J., dissents.

PITTMAN and ROGERS, JJ., not participating.

JAMES R. COOPER, Judge, dissenting. I dissent from the majority opinion because I do not agree that the chancellor erred in finding that Dr. Tortorich's P.A. had goodwill value independent of Dr. Tortorich's presence and reputation. In effect, the majority has ruled as a matter of law that solo professional practices can have no goodwill value independent of the practitioner. The majority decision, however, is contrary to our Supreme Court's holding that the question of goodwill valuation is one for the finder of fact in such cases.

In *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987), the Supreme Court clearly held that whether or not goodwill is marital property is a question of fact which is determined by evidence establishing the salability or marketability of that goodwill as a business asset of a professional practice. *Id.* at 205-06. In the case at bar, there was ample evidence supporting the chancellor's finding of goodwill as a business asset of the professional corporation. Richard Schwartz testified at length concerning his expert opinion that the business goodwill of the

professional association was worth approximately $180,000. Although there was expert opinion to the contrary, the trial judge in her letter opinion specifically found that "Mr. Schwartz presented a more acceptable, more substantiated, more knowledgeable and more reasonable valuation of the business . . . ." Although this is clearly a fact question which has been resolved by the fact finder on the basis of credibility, the majority ignores those issues and resolves the question as if it were a matter of law.

I dissent.