Tony TORTORICH *v.* Pam TORTORICH

97-884                                     968 S.W.2d 53

Supreme Court of Arkansas
Opinion delivered April 30, 1998

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Phil Campbell* and *Dorcy Kyle Corbin*, for appellant.

*Linda D. Shepherd, P.A.*, by: *Linda D. Shepherd* and *Allison R. Wooten*, for appellee.

TOM GLAZE, Justice. This case is the third appeal involving Tony and Pam Tortorich. *Tortorich v. Tortorich*, 324 Ark. 128, 919 S.W.2d 213 (1996) (*Tortorich II*); *Tortorich v. Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995) (*Tortorich I*). In *Tortorich I*, the Pulaski County Chancery Court, on December 15, 1993, denied Tony's counterclaim for absolute divorce, granted Pam a divorce from bed and board, and, among other things, ordered Tony to pay $6,000.00 per month child support, $1,000.00 per month alimony, and to maintain Pam on his health and hospitalization insurance. Pam was also awarded a marital interest in Tony's professional association. Tony appealed the chancellor's decree.

While Tony's appeal was pending in the court of appeals, he moved to Saline County, and, in March of 1994, filed suit against Pam, requesting an absolute divorce based on eighteen-months separation. Pam retaliated a few days later by suing Tony for an absolute divorce in Pulaski County. Both parties moved to dismiss each other's divorce suit, but the Pulaski and Saline County chancellors denied the motions. The Pulaski County chancellor, however, held Pam's case in abeyance, while the Saline County chancellor permitted Tony to proceed with his case; Pam continued her objection to the Saline County court's venue. On November 17, 1994, the Saline County chancellor entered his decree, which conflicted with the Pulaski County chancellor's earlier order of December 15, 1993. The Saline County chancellor granted Tony a divorce, denied Pam any alimony and health insurance, and awarded Pam child support in the monthly sum of $5,663.00. At this stage of litigation, Tony chose to follow the Saline County chancellor's decree, instead of the Pulaski County

chancellor's order. In doing so, he terminated his alimony and health insurance premium payments, and reduced his child support to the $5,663.00 monthly amount. Pam appealed the Saline County chancellor's November 17, 1994 decision to this court, and continued her objection and argument that the chancellor was acting outside his venue.

Next, Tony's appeal from the Pulaski County chancellor's December 15, 1993 order was decided by the court of appeals on June 28, 1995. In that decision, *Tortorich I*, the court of appeals affirmed the Pulaski County chancellor's award of child support, but found the chancellor had erred in evaluating Tony's business.[1] The court decided that, because the Pulaski County chancellor had made an error in giving Pam a substantial award in Tony's business, the chancellor should, on remand, reconsider an appropriate amount of alimony to be awarded to Pam. On remand, the Pulaski County chancellor held a hearing on October 10, 1995, and later entered an order on February 2, 1996, finding Pam was entitled to increased monthly alimony payments of $2,000, commencing from December 15, 1993, through July 31, 1994. The chancellor's decree adopted as further orders, other findings included in two earlier letter opinions.

After the *Tortorich I* decision and the Pulaski County chancellor's remand order increasing Tony's alimony, our court decided Pam's appeal which challenged the Saline County chancellor's venue. In our opinion issued June 3, 1996, we held that Pulaski County was the parties' proper venue, and that the Saline County chancellor had erred in refusing to dismiss Tony's divorce action. Accordingly, we reversed and dismissed the Saline County case.

Finally, because Tony had stopped his monthly alimony and health insurance premium payments and had failed to pay in full his monthly $6,000.00 child support payments in accordance with the Pulaski County chancellor's December 15, 1993 order, Pam filed a motion for Tony to show cause why he should not be held in contempt. After a hearing on Pam's motion, the Pulaski

---

[1] Tony did not question the Pulaski County chancellor's granting Pam a limited divorce.

County chancellor entered an order on February 28, 1997, in which she declined to find Tony in willful contempt, but did find he was subject to the chancellor's judgment, and found Tony owed the following arrears:

(1) Alimony in the amount of $2,000.00 for twenty-five months, beginning August 1, 1994, and ending August 1, 1996;

(2) Health insurance premium payments in the total amount of $1,884.44 for the periods between May 1, 1994, through April 1, 1995, and May 1, 1995, through August 1996; and

(3) Child support in the amount of $7,181.97, plus interest, for the period between August 1, 1994, and May 1, 1996.

Tony now appeals the Pulaski County chancellor's February 28, 1997 order, and first contends that, because the chancellor's February 7, 1996 remand order only awarded increased monthly alimony payments for the months between December 15, 1993, and July 31, 1994, without specifying that Tony was to continue paying alimony at the increased amount, the chancellor erred when holding he owed alimony arrearages between the months of August 1, 1994, and August 1, 1996. Tony had made his increased alimony payments through July 31, 1994, which, he says, brought him into compliance with the Pulaski County chancellor's orders. We disagree.

Tony bases his argument on language in the Pulaski County chancellor's remand order that provides Pam is entitled to total monthly alimony payments of $2,000.00 from December 15, 1993, through July 31, 1994; but he wholly ignores that order's directive whereby the chancellor incorporated her earlier opinion letters as a part of the court's findings and designated them as "further orders of the court." One of the chancellor's letter opinions dated October 23, 1995, related evidence justifying why alimony should be awarded to Pam and stated that Pam "is entitled to alimony based upon [Tony's] continued practice of oral surgery until her death or remarriage, or until she has established an earning capacity." Quite clearly, the Pulaski County chancellor ordered Tony to pay monthly alimony payments of $2,000.00 that continued past July 31, 1994, and until Pam's death or remarriage

or until she established an earning capacity. Thus, the arrears in alimony, insurance premiums, and child support found by the chancellor for the months commencing on August 1, 1994, were in accordance with her orders.

In his second point for reversal, Tony contends that, even if the Pulaski County chancellor's order directed him to pay alimony, insurance premium payments, and $6,000.00 monthly child support after July 31, 1994, he claims that the order was ineffectual from the time the Saline County chancellor's absolute divorce decree was entered on November 17, 1994, until the Saline County order was reversed by our court on June 3, 1996. Tony cites the cases of *Smith v. Smith*, 236 Ark. 141, 365 S.W.2d 247 (1963), and *Myers v. Myers*, 226 Ark. 632, 294 S.W.2d 67 (1956), for the proposition that a decree of absolute divorce supersedes a limited decree, and argues that, because Pam never obtained a stay of the Saline County chancellor's absolute divorce decree during her appeal of it, the Saline County decree governed the parties' conduct and obligations until the decree was reversed. Again, we disagree.

While the *Smith* and *Myers* cases, like the case here, involved parties who had filed different but related marital actions in separate chancery courts, the marital couples in those two earlier cases entered their appearances in the respective actions and venue was not an issue. In short, *Smith* and *Myers* simply are not helpful to the instant case, where Pam unwaveringly adhered to her objection questioning the Saline County Chancery Court's venue. This court understands that venue is a procedural matter, not a subject-matter jurisdiction one, and this distinction is made clear in our holdings that, *absent an objection*, a trial court has the power to render a binding judgment even though venue was not proper. *Prairie Implement Co. v. Circuit Court of Prairie County*, 311 Ark. 200, 844 S.W.2d 299 (1992) (Emphasis added.); *Mark Twain Life Ins. Corp. v. Cory*, 283 Ark. 55, 670 S.W.2d 809 (1984); *see also Hargis v. Hargis*, 292 Ark. 487, 731 S.W.2d 198 (1987) (improper venue, unlike the objection to lack of subject matter jurisdiction, can be waived by appearance).

■ ■ We emphasize the fact that Pam steadfastly objected to the Saline County Chancery Court's venue and ultimately prevailed on that issue in *Tortorich II.* Accordingly, we reversed and dismissed Tony's absolute divorce action. As this court has said so many times, the venue issue is characterized as one of jurisdiction of the person, the improper assertion of which, in that instance, justifies issuance of a writ of prohibition. *Steve Standridge Insurance, Inc. v. Langston,* 321 Ark. 331, 900 S.W.2d 955 (1995). Stated another way, we have recognized that we commonly issue writs of prohibition when venue is improperly laid, and we have said that the situation is the equivalent of a lack of jurisdiction of the person. *Fausett v. Host,* 315 Ark. 527, 868 S.W.2d 472 (1994). Thus, in these circumstances when venue or jurisdiction of the person is not waived by the defending party, the trial court, which erroneously assumes venue or jurisdiction of a person, has no power or authority to act. *See West Memphis Sch. Dist. No. 4 v. Circuit Court,* 316 Ark. 290, 871 S.W.2d 368 (1994). Here, the Saline County Chancery Court had no authority to act or proceed with Tony's divorce action against Pam, and accordingly the Pulaski County chancellor's orders entered on December 15, 1993, February 2, 1996, and February 28, 1997, remained effectual and controlling throughout all the parties' proceedings and appeals.

■ In conclusion, we wish to emphasize the General Assembly's enactment of Ark. Code Ann. § 9-12-303(a) and (c) (Repl. 1993), and point out that if this statute had been followed, the two chancery courts' conflicting orders could have been avoided. In particular, § 9-12-303(c) provides as follows:

> When a spouse initiates an action against the other spouse for an absolute divorce, divorce from bed and board, or separate maintenance, then the venue for the initial action shall also be the venue for any of the three (3) named actions filed by the other spouse, regardless of the residency of the other spouse.

Under the plain language of § 9-12-303(c), once a plaintiff spouse has filed for (1) absolute divorce, (2) limited divorce, or (3) separate maintenance, the defendant spouse can no longer go to a different court (division or county) to file any one of the three named marital-related actions. Instead, the defendant spouse,

regardless of his own county of residence, must file any new marital cause of action in the same action the plaintiff spouse already initiated.

In the present case, because Pam had filed suit against Tony first in Pulaski County Chancery Court, venue was clearly established in Pulaski County for any divorce action later brought by Tony. Thus, the Pulaski County chancellor properly concluded that Tony is in arrears in his payments for alimony, child support, and health insurance.

For the reasons above, we affirm.

CORBIN and BROWN, JJ., not participating.