2012 Ark. App. 346

**Tom G. CLOWERS, Appellant**

v.

**Linda J. Clowers STICKEL, Appellee.**

**No. CA 11–1306.**

Court of Appeals of Arkansas.

May 16, 2012.

Troy Gaston, Walters & Gaston, Greenwood, for Appellant.

Cindy L. Hawkins, Hawkins Law Firm, P.A., Springdale, for Appellee.

DAVID M. GLOVER, Judge.

Appellant, Tom Clowers, challenges both the trial court's finding that his motion to modify his divorce decree is barred by res judicata and collateral estoppel and its award of travel expenses and attorney's fees to his ex-wife, appellee Linda Stickel.[1] We affirm the trial court's decision that Tom's motion to modify is barred by res judicata; reverse and remand the award of attorney's fees to Linda in order for the trial court to consider the *Chrisco* factors; and reverse the award of travel expenses.

### The Original Action

The parties were married in August 1967 and separated in April 2001, at which time Tom filed a complaint for divorce and a petition for a temporary restraining order. Later in April, a temporary restraining order and a temporary order of protection were issued on Tom's behalf. Linda answered Tom's complaint for divorce and also filed a counterclaim for an annulment or, in the alternative, an absolute divorce. Then, on May 1, 2001, the trial court vacated the temporary order of protection, finding that the allegations were not sustained by the proof; granted Linda's oral motion to request a protective order, but then denied the motion itself; and issued a temporary restraining order that "during the pendency of this action the parties should be, and hereby are, each restrained and enjoined from going on or about the premises where the other may be found, and are further restrained and enjoined from harassing, molesting, or interfering each with the other."

A decree of divorce was entered on August 24, 2001. The decree contained the following provision: "The parties are each permanently restrained and enjoined from harassing, molesting, or interfering each with the other."

### First Attempt to Modify

On January 10, 2002, in response to a contempt petition filed by Linda, Tom filed a counterpetition for contempt and modification, generally alleging:

> That the Decree, signed by the attorneys for the parties, included a provision for a restraining order. [Tom] was not informed of this provision by his attorney nor did he agree to such a provision. [Linda] has abused this provision by contacting the police whenever [Tom] is in the vicinity of her home which is not prohibited under the restraining order.

---

1. The trial court also awarded Linda $5,000 in damages. Tom does not appeal that award.

Due to the abuse of the restraining order by [Linda], that provision of the decree should be eliminated. In the alternative, the wording of the provision should be corrected to prevent the parties from direct contact with the other party only.

After a hearing, the trial court entered an order dated February 15, 2002, finding, in pertinent part, that neither party was in contempt of court and that the "permanent restraining order contained within the decree of divorce stands and is not modified by this Court." This order was not appealed.

### Second Attempt to Modify

On July 13, 2006, Tom filed a second petition to modify the divorce decree—again specifically attempting to strike the restraining-order language from the decree. Tom alleged that the decree, with the objectionable language, was entered "with the collusion of [Tom's] former attorney, [Linda], and [Linda's] attorney with the purpose of perpetrating a fraud upon [Tom]"; that the decree had not been provided to him for his approval prior to its submission to the trial court; and that he never would have voluntarily agreed to a permanent restraining order had it been disclosed to him. Tom further alleged that there was no reason for the "fraudulently obtained provision" to remain in force, as Linda no longer resided in Arkansas.

Linda answered Tom's petition and requested that it be dismissed, alleging that she and her counsel had provided Tom's counsel with a copy of the decree, had revised the proposed decree to satisfy Tom's requested changes, and had the decree approved by Tom's representative prior to entering it of record. She also filed a motion for summary judgment; in support of that motion, she referenced a letter dated August 23, 2001, from Tom's then-attorney, which stated, in pertinent part, "I've reviewed your revised Decree, and it looks fine to me. Once Tom signs off on the Property Settlement Agreement, I'll bring it by your office and sign the Decree."

On May 1, 2007, the trial court entered an order granting Linda's motion to dismiss Tom's petition to modify the decree with prejudice, finding that Tom's motion was barred by res judicata and collateral estoppel; that Tom had previously moved to modify the decree; that the issue was tried on January 11, 2002; and that in the 2002 order, the trial court refused to modify the permanent restraining order contained within the decree. On May 31, 2007, Tom filed a Notice of Appeal and Request for New Trial purporting to appeal the order; however, in a letter dated August 16, 2007, the court reporter informed Tom that he had not sent her a copy of the notice of appeal; that she had just received it; and that if he desired to appeal the matter, he needed to contact her. Tom then filed a document entitled "Amended Notice of Appeal to Request for a New Trial and Request for Extension of Time to File Transcript" on August 30, 2007, and Linda resisted this motion. A letter dated December 6, 2007, from the Office of the Clerk of the Supreme Court of the State of Arkansas informed Tom that the Arkansas Supreme Court had denied his motion and amended motion for rule on the clerk.

### Third Attempt to Modify

On April 7, 2011, Tom filed yet another motion to modify the divorce decree. In this motion, he again alleged that he never reviewed the divorce decree or approved its terms and that his attorney had told him that all of the relevant terms regarding the decree were contained in the property-settlement agreement and no addi-

tional terms would be added to the decree. Tom asserted that this was a misrepresentation because of the restraining-order language contained in the decree, and that under Rule 60(c)(4) of the Arkansas Rules of Civil ⌊5⌋Procedure, this was a proper ground under which to modify the divorce decree. Linda resisted the motion, moved for dismissal and summary judgment, and counterclaimed for contempt, attorney's fees, travel expenses, and damages for abuse of process and defamation. Linda also requested that Tom be required to undergo a mental evaluation; that she be granted an order of protection; that she be awarded punitive damages; and that sanctions pursuant to Rule 11 of the Arkansas Rules of Civil Procedure be imposed on both Tom and his attorney. In an order filed on September 27, 2011, the trial court denied Tom's motion to modify and dismissed it with prejudice, finding that the petition was barred by res judicata and collateral estoppel, as the issue had been raised and litigated on at least two separate occasions. The trial court also awarded Linda $5,000 in damages and $4,106.80 in attorney's fees and travel expenses. Tom timely filed this appeal.

### Res Judicata

In his first point, Tom argues that the trial court erroneously concluded that res judicata and collateral estoppel barred his motion to modify the divorce decree pursuant to Rule 60(c)(4) of the Arkansas Rules of Civil Procedure. He contends that because there was fraud and/or misrepresentation, neither doctrine applies. He is incorrect.

In *Hunt v. Perry*, 355 Ark. 303, 310, 138 S.W.3d 656, 659–60 (2003) (citations omitted), *cert. denied*, 541 U.S. 1074, 124 S.Ct. 2428, 158 L.Ed.2d 984 (2004), our supreme court held:

Res judicata means a thing or matter that has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction. The doctrine of res judicata bars the relitigation of claims that were actually litigated in the first suit, as well as those that could have been litigated. The underlying policy of res ⌊6⌋judicata is to prevent parties from relitigating issues or raising new issues when they have already been given a fair trial.

The concept of res judicata has two facets, issue preclusion and claim preclusion. *Lindsey v. Green*, 2010 Ark. 118, 369 S.W.3d 1. Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.*

Rule 60(c)(4) of the Arkansas Rules of Civil Procedure provides that a decree may be set aside after more than ninety days for misrepresentation or fraud. In support of his argument that the trial court erred in dismissing his appeal on the basis of res judicata, Tom cites *Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987), and *Hyden v. Circuit Court of Pulaski Co.*, 371 Ark. 152, 264 S.W.3d 493 (2007). However, these cases are distinguishable.

In *Davis*, the amount of the judgment was incorrect, and it was not discovered until after the matter had been appealed to this court and affirmed. After this court's mandate issued, the trial court entered an order correcting the judgment to reflect the proper amount. The appellant appealed the entry of that order, arguing that

the circuit court lacked jurisdiction to enter it. Our supreme court disagreed, holding that there was constructive fraud, which did not necessarily consist of guilt or moral wrong, but instead consisted of legal or equitable duties owed to another party, and that the circuit court indeed had jurisdiction to modify the judgment after the mandate of the appellate court. The supreme court further held that the law-of-the-case doctrine did not prohibit the trial court from taking any action pursuant to Rule 60(c)(4), as that rule was an exception to the law-of-the-case doctrine.

In *Hyden*, a dismissal was obtained in a lawsuit based on a failure to file a discovery response with the circuit court. However, unbeknownst to the party filing for dismissal, a response had indeed been filed. The order of dismissal was subsequently vacated pursuant to Rule 60(c)(4), and Hyden petitioned for a writ of certiorari. Our supreme court denied the writ, holding that the fact that the misrepresentations were inadvertent did not alter their effect on the circuit court—they resulted in a miscarriage of justice that Rule 60 is designed to remedy.

Tom contends that the present case is like *Hyden* in that even if Linda believed that Tom had agreed to the restraining order in the decree, he did not agree and therefore an unintentional fraud had been perpetrated upon the trial court. We disagree.

The distinction between the *Davis* and *Hyden* cases and the present case is that, in *Davis* and *Hyden*, the issues of fraud and misrepresentation were being raised for the first time. In the present case, the issue concerning the restraining-order language has now been raised on three different occasions.

In the 2002 action, Tom petitioned the trial court for modification of the divorce decree, arguing that he was not informed of the restraining-order provision and that he had not agreed to such a provision. After a hearing, the trial court held that the permanent restraining order contained in the divorce decree would not be modified. This hearing gave Tom the opportunity to litigate all aspects of the restraining-order issue, and it is now res judicata. Even though he did not allege fraud in 2002, he could have done so because he was aware of the provision. Tom then filed a petition to modify the same divorce-decree provision in 2006, and now for the third time Tom has attempted to have the same provision modified. This is exactly what the doctrine of res judicata is designed to prevent. Any argument pertaining to the inclusion of the restraining-order language in the divorce decree since 2002 is now and forever barred by res judicata.

### Attorney's Fees

Tom argues that because Linda was awarded $5,000 for damages due to being "upset on several occasions," that was a personal-injury award, not a domestic-relations award, and because it is a claim based in tort, an award of attorney's fees is not proper. We disagree. This clearly is a domestic-relations case, and courts have the inherent power to award attorney's fees in a domestic-relations proceeding. *Szabo v. Womack*, 2011 Ark. App. 664, 2011 WL 5220503. The amounts of such awards are matters within the discretion of the courts. *Tortorich v. Tortorich*, 50 Ark.App. 114, 902 S.W.2d 247 (1995). We, however, reverse and remand the award of attorney's fees because of the trial court's failure to consider the *Chrisco* factors in this case.

In *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990), our supreme court set forth factors to be considered in making an award of attorney's fees:

Additionally, although there is no fixed formula in determining the computation of attorney's fees, the courts should be guided by recognized factors in making their decision, including the experience and ability of the attorney, the time and labor required to perform the legal service properly, the amount involved in the case and the results obtained, the novelty and difficulty of the issues involved, the fee customarily charged in the locality for similar legal services, whether the fee is fixed or contingent, the time limitations imposed upon the client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. 304 Ark. at 229, 800 S.W.2d at 718–19.

Even though we have not strictly required documentation of time and expense in a domestic-relations case where the circuit court has had an opportunity to observe the parties and their level of cooperation and obedience to court orders, we have consistently held that if a trial court fails to consider the *Chrisco* factors when awarding attorney's fees, the issue must be reversed and remanded for such an analysis. *Szabo, supra.* Here, portions of Linda's request for relief were granted by the trial court, but other portions were denied. We make no comment on the propriety of the attorney's fees, but because we cannot discern whether such an analysis was performed in this case, we reverse and remand for such a consideration.

### *Travel Expenses*

Tom's last argument on appeal is that the trial court erred in awarding Linda her "travel expenses," including mileage, meals, and lost wages. In support of this proposition, Tom cites *Sunbelt Exploration Co. v. Stephens Production Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995), which held that only costs authorized by statute may be awarded and that items such as travel expenses are not allowable. Rule 54(d) of the Arkansas Rules of Civil Procedure supports this position:

(d) *Costs.*

(1) Costs shall be allowed to the prevailing party if the court so directs, unless a statute or rule makes an award mandatory.

(2) Costs taxable under this rule are limited to the following: filing fees and other fees charged by the clerk; fees for service of process and subpoenas; fees for the publication of warning orders and other notices; fees for interpreters appointed under Rule 43; witness fees and mileage allowances as provided in Rule 45; fees of a master appointed pursuant to Rule 53; fees of experts appointed by the court pursuant to Rule 706 of the Arkansas Rules of Evidence; fees of translators appointed by the court pursuant to Rule 1009 of the Arkansas Rules of Evidence; and expenses, excluding attorney's fees, specifically authorized by statute to be taxed as costs.

We find no statutory authority to uphold an award of travel expenses to Linda. Linda's counsel cites Arkansas Code Annotated section 9–19–305(c) (Repl. 2009) in an attempt to uphold these expenses; however, this statutory section concerns registration of child-custody determinations and has no application to the issue in this case. For this reason, we reverse the award of travel expenses to Linda.

Affirmed in part; reversed and remanded in part; and reversed in part.

ABRAMSON and HOOFMAN, JJ., agree.