# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-12-479

|  |  |  |
|---|---|---|
| PETER BRAVE | | **Opinion Delivered** October 2, 2013 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. DR-10-5539] |
| V. | | |
| MARIE BRAVE | | |
| | APPELLEE | HONORABLE ELLEN B. BRANTLEY, JUDGE |
| | | REVERSED AND REMANDED |

## BILL H. WALMSLEY, Judge

Peter Brave and Marie Brave own a very successful restaurant in Little Rock called Brave, Incorporated d/b/a Brave New Restaurant (hereafter, BNR). When the parties divorced after twenty-two years of marriage, Peter was ordered to pay $420,000 for Marie's interest in BNR. In a subsequent order following Peter's request for additional findings, the trial court found that the restaurant held goodwill that was corporate and, consequently, marital property. Peter raises two points on appeal: 1) the trial court erred in failing to find that the restaurant's goodwill was personal goodwill and thus non-marital property, and 2) the trial court erred by "double dipping" into his future earnings when it both divided the goodwill and awarded alimony. We agree with Peter's first point, and therefore reverse and

remand.[1]

At the time the parties met, Peter was working as a chef at the Capital Hotel, and Marie was employed as a waitress there. The parties married and, in August 1991, opened BNR. Peter testified that he creates and executes the menu at BNR and that his job is to know what the customers want. The parties agreed that, while Peter worked in the kitchen, Marie handled the "front end" of the business, including scheduling staff and ordering liquor for the restaurant. According to Peter, although Marie was very helpful in the beginning, she became less involved after their two children were born. Peter testified that Marie was no longer involved in operating the restaurant once it moved to its current location in 2000.

Both Peter and Marie offered expert real-estate appraisers who gave their opinions as to the value of the restaurant space. Peter also introduced testimony from Gus Dobbs, a business consultant employed by the Braves to handle accounting and payroll for BNR. Dobbs asserted that BNR's goodwill amounted to $819,057; however, Dobbs also testified that the business itself could not be separated from Peter because, "In a very real sense, the business is Peter Brave. The whole business is his personality." Dobbs described BNR as a unique operation in a hard-to-find location and stated that Peter simply could not be replaced. Dobbs further testified that he would not say whether the goodwill of the business was professional (marital) or personal (non-marital).

In the divorce decree, the trial court found that the value of the real estate for the

---

[1]Marie filed a motion to dismiss the appeal; however, we find the motion to be without merit, and it is therefore denied.

business entity was $495,000 and that the value of BNR, including the furniture, fixtures, goodwill, and equipment, was $895,000. The trial court then deducted debt of $550,000 and concluded that the net value of the business, including the real property, was $840,000. The trial court awarded Marie $420,000 for her interest in the restaurant and later ruled that the goodwill in BNR was corporate goodwill and therefore marital property and that Marie was entitled to one-half.

With respect to the division of property in a divorce case, we review the trial judge's findings of fact and affirm them unless they are clearly erroneous. *Cole v. Cole*, 84 Ark. App. 134, 201 S.W.3d 21 (2005). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id*.

The Arkansas Supreme Court has held that, for goodwill to be marital property, it must be a business asset with value independent of the presence or reputation of a particular individual. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). In other words, it must be an asset that may be sold, transferred, conveyed, or pledged. *Id*. Whether goodwill is marital property is a fact question and a party, to establish goodwill as marital property and divisible as such, must produce evidence establishing the salability or marketability of that goodwill as a business asset. *Id*. Any value that attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a divorce proceeding. *Tortorich v. Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995). "The *Tortorich* and *Wilson* cases confirm that the burden is on the party who seeks to

establish goodwill as a marital asset to produce convincing proof delineating between professional goodwill on the one hand and personal goodwill on the other." *Williams v. Williams*, 82 Ark. App. 294, 314, 108 S.W.3d 629, 642 (2003).

Arkansas has not recognized personal goodwill in a non-professional business; however, under the unique facts of this particular case, we are extending the concept to BNR because Peter's presence is essential to the success of the restaurant.[2] The trial judge credited Dobbs's testimony and appeared to recognize that there was what amounts to personal goodwill in BNR. The trial judge commented, "I think [Peter] has some goodwill" and "[Peter] has built up goodwill." The judge stated that the loss of Peter to the restaurant would be "very, very damaging" and agreed that, if Peter left the restaurant, "it would not be the same." The trial judge also recognized that Marie had contributed very little to the restaurant over the previous ten years and that the success of the restaurant was due to Peter's hard work. Further, the trial judge stated that she had no basis on which to allocate how much of the restaurant was personal goodwill, as opposed to corporate goodwill. We hold that the trial court clearly erred in finding that Marie sustained her burden of proving that the goodwill in BNR was entirely marital property, given that the evidence showed that the restaurant held personal goodwill attributable to Peter.

We do not reach the merits of Peter's second point because we remand and direct the

---

[2]Other jurisdictions have recognized personal goodwill in connection with commercial or non–professional business enterprises. *See, e.g.*, *McQuay v. McQuay*, 217 P.3d 162 (Okla. Civ. App. 2009); *Bertholet v. Bertholet*, 725 N.E.2d 487 (Ind. Ct. App. 2000); *Hough v. Hough*, 793 So. 2d 57 (Fla. Dist. Ct. App. 2001).

trial court to determine what portion of BNR's value was personal goodwill, which is Peter's separate property, and to divide the remaining marital assets of the business, including the real estate, furniture, fixtures, and equipment. The trial court may then reassess alimony accordingly.

Reversed and remanded.

GLADWIN, C.J., and WHITEAKER and VAUGHT, JJ., agree.

HARRISON and HIXSON, JJ., dissent.

**BRANDON J. HARRISON, Judge, dissenting.** The circuit court's corporate-goodwill determination is the crux of this case. We have previously recognized that a goodwill determination is a fact-intensive inquiry. *Cummings v. Cummings*, 104 Ark. App. 315, 323, 292 S.W.3d 819, 824 (2009). Here, the circuit court heard testimony and argument on the goodwill issue and concluded that it was not persuaded that the goodwill Peter argued for was personal rather than corporate. That decision was based on the proof and the court's credibility determinations; we should not disturb it. But it has been disturbed, in part, I believe, because the majority did not view all the evidence in a light most favorable to Marie, as our standard of review requires.

Here's the standard that should drive the decision-making process in this divorce case. We review the entire record anew. We defer to the superior position of the circuit court to assess the credibility of witnesses and the weight it should give their testimony. *Taylor v. Taylor*, 369 Ark. 31, 41, 250 S.W.3d 232, 240 (2007). We do not reverse the court's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. A

5

finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *See id.*

Because the majority does not properly apply our standard of review in this appeal, I respectfully dissent.

Consider the selective reliance on Gus Dobbs's testimony. The majority notes that Dobbs favorably testified for Peter's personal-goodwill argument in some respects. Dobbs, who was admittedly not a business-evaluation expert but a tax advisor, used an "income approach" to value the goodwill associated with Marie's and Peter's business. The number he deduced was $819,057. He said the business has no equity without goodwill.

But Dobbs also testified that his calculations were based on the restaurant's value as an ongoing business with—of all things—a *replacement* chef for Peter. And as the majority notes but does not permit the circuit court to credit, Dobbs testified that he could not say whether the restaurant's goodwill was corporate or personal. Moreover, when Marie's lawyer asked Dobbs about his statement that "the whole business is [Peter's] personality" Dobbs agreed that the restaurant would not suffer if Peter stepped away for two weeks. He then said, "Well, it might make it two months." Next came this exchange between Dobbs and Marie's lawyer:

MARIE'S COUNSEL: If he [Peter] was away for two years, what would happen to the goodwill of this business?

DOBBS: Well, goodwill is something that is an intangible asset and it depreciates over time, and that's why buyers when they come in to buy a business look at the goodwill number, and they know that they can't maintain that necessarily over a period of time, so they look at it from that standpoint.

6

When questioned by Peter's attorney, Dobbs said:

> That restaurant has one of the most unique operators in it I've ever seen. . . .
> It is a unique operation that's been built in a location that nobody can find real
> easy. So yes, he would be very difficult to replace, and that was my most
> difficult decision to make, what number do you plug in there to replace Peter
> Brave.

The material point is not that the location of the restaurant has little or nothing to do with personal goodwill, but that Dobbs never said that the restaurant could not go on without Peter. A main aspect of personal goodwill associated with a business, however, is that the personal goodwill is not saleable and the business cannot survive if the so-called key person is cleaved from it. Dobbs's own testimony therefore directly undermined Peter's personal-goodwill argument—or so the circuit court could have reasonably concluded, and in fact did.

There's no denying that the circuit court looked to Dobbs. "[Peter] has built up goodwill. Whether someone could come in and step into his shoes is a little bit hard to say, but I'm taking your witness [Dobbs]," said the court from the bench. What the court meant precisely by this statement is unclear. So we return to the written order, which tells us that whatever the merit of the witnesses' and parties' testimony, the circuit court as fact-finder ultimately rejected the personal-goodwill argument. And it did so because the record contained, in its judgment, insufficient proof that the goodwill was personal rather than corporate; or conversely, the record provided sufficient proof that the goodwill was corporate, not personal.

Dobbs was not the only one who testified about the restaurant's worth. Two nationally-certified, business-appraiser experts valued the restaurant using several different

methods, including the same "income approach" Dobbs used. That the court did not mention these other experts in its order or divorce decree does not necessarily mean it ignored them. But even if all other experts were ignored, Dobbs himself could not, as the majority acknowledges, delineate between corporate and personal goodwill and assign each a value; how then was the circuit court supposed to do so?

Consider, too, what the court stated at the trial's end: "the loss of Mr. Brave to that restaurant would be very, very damaging. But as long you could still call it Brave New Restaurant, as long as it was still there, as long as they still had the menu, people would come for a while." The court did not come unmoored from the record in finding that the restaurant could continue without Peter. There was testimony that Peter vacationed for weeks at a time, having trained other employees to manage the restaurant in his absence. Peter told the court that he could "delegate the daily operational stuff." And he had trained his sous chef to "mimic everything wonderfully." Peter's staff in general can recreate his food creations. He also said, "I do need to kind of wean myself from [the restaurant] also and I guess by doing that I can go ahead and start working and making it a little bit more anonymous."

There is more. As the majority notes, the Braves were married when they started the business in the early 1990s. Marie was then and has remained a 50% shareholder in the closely-held corporation. According to Dobbs, Marie had equal legal power to make decisions, cut checks, and run the business, just as Peter did. Peter also agreed that Marie was the one who has kept up largely with the company's finances. She has also held the

8

restaurant's liquor license, received a salary from the restaurant during the marriage, did some bookkeeping, and worked there sporadically. Yet, under the majority's view she receives no direct monetary benefit from the restaurant upon the dissolution of her marriage.

In 1987 Arkansas courts began recognizing personal/professional goodwill in divorce cases where the business entity was a professional association and the party claiming "personal" or "professional" goodwill was the husband who was a licensed professional with a heavy referral-type practice. *See Williams v. Williams*, 82 Ark. App. 294, 108 S.W.3d 629 (2003) (gastroenterology-surgery practice); *Tortorich v. Tortorich*, 50 Ark. App. 114, 902 S.W.2d 247 (1995) (oral-surgery practice); *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987) (orthopedic-surgery practice). In each of these cases, the husbands owned a part or all of the professional association, and the wives could not have lawfully owned an interest in the entity because they were not themselves licensed professionals. *See* 1963 Ark. Acts 155, § 14 (now codified at Ark. Code Ann. § 4-29-208 (Repl. 2001)).

One more historical doctrinal point. Our short line of professional-goodwill cases stems directly from one Nebraska Supreme Court opinion, *Taylor v. Taylor*, 222 Neb. 721, 729, 386 N.W.2d 851, 857 (1986). This has some importance because, in *Taylor*, before the Nebraska Supreme Court recognized goodwill in the professional context (a doctor's practice was at issue there), the supreme court noted that the intangible value businesses have due to patronage "may be considered as a part of the marital estate for the purpose of a dissolution proceeding[.]" The supreme court then recognized that professional practices were a special class of cases given the particular "difficulty [that] may arise in valuing a professional practice,

because goodwill is likely to depend on the professional reputation and continuing presence of a particular individual in that practice." *Id.* So the Nebraska opinion that started Arkansas down its professional-goodwill path acknowledged that most commercial enterprises, including their related goodwill, would typically fall within Nebraska's marital-property statute.

Here, the majority provides no legal reason why Arkansas's marital-property statute should not apply in the usual sense except to rely on one narrow, *sui generis* class of professional-practice cases—which it today expands significantly, while reversing a circuit court's fact-intensive determination on a disputed evidentiary record, and when using one of this court's most deferential standards of review.

Finally, I wonder about the utility and fairness of the decision to remand this case to the circuit court so it may determine "what portion of BNR's value was personal goodwill." How is the circuit court to do now what it could not do before? At the hearing on Peter's posttrial motion the court said, "[T]he testimony . . . [on] valuation is not helpful, in my opinion, to the [personal goodwill] argument." The circuit court then explained that the valuation testimony consisted of assessments of what the restaurant would sell for on the open market. "[H]onestly, since it was put on by Mr. Brave, I mean, I assumed that it was more or less agreed to. Now, I understand the argument that some of all the goodwill might be personal, but I don't have any business—any way to allocate it." My concluding point is this: Peter had his chance to establish personal goodwill and its worth through Dobbs (or anyone else) the first go around. He failed to do so. And even if Marie had the burden to prove that

10

the restaurant's value was corporate goodwill rather than personal goodwill, she did so to a sufficient degree when our standard of appellate review is properly applied.

**KENNETH S. HIXON, Judge, dissenting.** The majority and the other dissenting opinion are both partially correct. Each opinion bases its conclusion on the appropriate burden of proof. Ordinarily all property acquired through marriage is marital property, and the party who is seeking to exclude the property has the burden of proof. *See* Ark. Code Ann. § 9-12-315; *Carroll v. Carroll*, 2011 Ark. App. 356, 384 S.W.3d 50. Here, Brave, Inc., was acquired during the marriage, owned fifty percent each by Peter and Marie Brave, rendering it undoubtedly marital property. Brave, Inc.'s assets are presumptively marital. Goodwill of a business is a valuable asset subject to purchase and sale, and it is divisible as marital property. *Nicholson v. Nicholson*, 11 Ark. App. 299, 669 S.W.2d 514 (1984). The parties presented evidence to support the value of this "ongoing business" through their bookkeeper, who described it as "a unique operation in a hard-to-find location" with a "goodwill" value of $819,057. Our court upheld a division of goodwill in a tavern in *Nicholson*, holding that "there was ample proof that the business generated substantial income, was a going concern, and that the services it provided had a substantial following in the community." 11 Ark. App. at 301. The same is true of Brave, Inc. d/b/a/ Brave New Restaurant. If Mr. Brave wants to exclude the value of Brave, Inc.'s goodwill from marital property, he would have the burden of proof to support excluding it.

On the other hand, the majority is correct in that if the marital property includes goodwill unique and personal to a licensed professional, then the value of that goodwill is

retained as the sole property of the licensed professional, unless the non–professional spouse can prove otherwise. That exception is found in *Wilson v. Wilson*, 294 Ark. 194, 741 S.W. 2d 640 (1987) and its progeny, indicating that the licensed professional's goodwill is merely a representation of that person's future earning capacity. The problem is that the *Wilson* "professional license goodwill" exception has never been extended in Arkansas beyond a licensed professional practice, specifically a medical or dental practice. Here, Brave, Inc., is not a licensed professional practice. Indeed, the only license at issue here is the liquor license, attained in Marie's name. Therefore, we have competing burdens of proof depending on whether the goodwill of Brave, Inc., is subject to the general statutory rule of marital property, or whether it is subject to the *Wilson* professional license goodwill exception.

Our job is simple: are we going to expand the scope of the "professional license goodwill" exception to include companies with goodwill that "are unique to the facts of this particular case" as suggested by the majority? What does "under the unique facts of this particular case" mean? Instead of having only a professional license goodwill exception, do we now have a "unique operation in a hard-to-find location" exception? That sounds a lot like an "every small business with a key man" exception.

The Arkansas Supreme Court created a very narrow "professional license goodwill" exception in *Wilson*. If an expansion is to be made, I would defer to the Arkansas Supreme Court to make that sweeping change in our state's law. Furthermore, I do not believe it is reversible error for the circuit court to correctly apply existing law, with no way of knowing that a majority of judges on our divided court would make such a change. Because Peter

failed to demonstrate reversible error, I would affirm.

*James Law Firm*, by: *Lee D. Short*, for appellant.

*Lueken Law Firm*, by: *Patty W. Lueken*; and *James, Fink & House, P.A.*, by: *Matthew R. House*, for appellee.